DELCOSTELLO v. INTERNATIONAL BROTHERHOOD
OF TEAMSTERS ET AL.

No. 81–2386.   Argued April 25, 1983—Decided June 8, 1983*

*Together with No. 81–2408, *United Steelworkers of America, AFL–
CIO–CLC, et al.* v. *Flowers et al.*, on certiorari to the United States Court
of Appeals for the Second Circuit.

152

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEVENS, J., *post*, p. 172, and O'CONNOR, J., *post*, p. 174, filed dissenting opinions.

*William H. Zinman* argued the cause for petitioner in No. 81–2386. With him on the briefs was *Paul A. Levy*. *Robert M. Weinberg* argued the cause for petitioners in No. 81–2408. With him on the briefs were *Michael H. Gottesman, Bernard Kleiman, Carl Frankel*, and *Laurence Gold*.

*Bernard S. Goldfarb* argued the cause for respondents in No. 81–2386 and filed a brief for respondent Anchor Motor Freight, Inc. *Isaac N. Groner*, by appointment of the Court, 459 U. S. 1143, argued the cause and filed a brief for respondents in No. 81–2408. *Carl S. Yaller* and *Bernard W. Rubenstein* filed a brief for respondent Local 557, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America in No. 81–2386.†

---

†*Steven C. Kahn* and *Stephen A. Bokat* filed a brief for the Chamber of Commerce of the United States as *amicus curiae* urging reversal in both cases. *Alan B. Morrison* filed a brief for Teamsters for a Democratic Union as *amicus curiae* urging reversal in No. 81–2386.

*David Previant, Robert M. Baptiste*, and *Roland P. Wilder, Jr.*, filed a brief for the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America as *amicus curiae* urging affirmance in No. 81–2386.

*Michael L. Boylan* and *Teddy B. Gordon* filed a brief for Gordon L. Higgins as *amicus curiae* in No. 81–2408.

154

JUSTICE BRENNAN delivered the opinion of the Court.

Each of these cases arose as a suit by an employee or employees against an employer and a union, alleging that the employer had breached a provision of a collective-bargaining agreement, and that the union had breached its duty of fair representation by mishandling the ensuing grievance-and-arbitration proceedings. See *infra*, at 162; *Bowen* v. *USPS*, 459 U. S. 212 (1983); *Vaca* v. *Sipes*, 386 U. S. 171 (1967); *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554 (1976). The issue presented is what statute of limitations should apply to such suits. In *United Parcel Service, Inc.* v. *Mitchell*, 451 U. S. 56 (1981), we held that a similar suit was governed by a state statute of limitations for vacation of an arbitration award, rather than by a state statute for an action on a contract. We left two points open, however. First, our holding was limited to the employee's claim against the employer; we did not address what state statute should govern the claim against the union.[1] Second, we expressly limited our consideration to a choice between two *state* statutes of limitations; we did not address the contention that we should instead borrow a *federal* statute of limitations, namely, § 10(b) of the National Labor Relations Act, 29 U. S. C. § 160(b).[2] These cases present these two issues.

---

[1] Only the employer sought certiorari in *Mitchell*. Hence, the case did not present the question of what limitations period should be applied to the employee's claim against the union. See 451 U. S., at 60; *id.*, at 71–75, and n. 1 (STEVENS, J., concurring in part and dissenting in part).

[2] 49 Stat. 453. That section provides in pertinent part:

"*Provided* . . . no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ."

The petition for certiorari in *Mitchell* presented only the question of which *state* statute of limitations should apply. The parties did not contend in this Court or below that a federal limitations period should be used instead of analogous state law. Only an *amicus* suggested that it would be more appropriate to use § 10(b); moreover, application of § 10(b) rather

We conclude that § 10(b) should be the applicable statute of limitations governing the suit, both against the employer and against the union.

I

A

Philip DelCostello, petitioner in No. 81–2386, was employed as a driver by respondent Anchor Motor Freight, Inc., and represented by respondent Teamsters Local 557. On June 27, 1977, he quit or was discharged [3] after refusing to drive a tractor-trailer that he contended was unsafe. He took his complaint to the union, which made unsuccessful informal attempts to get DelCostello reinstated and then brought a formal grievance under the collective-bargaining agreement. A hearing was held before a regional joint union-management committee. The committee concluded that the grievance was without merit. DelCostello was informed of that decision in a letter dated August 19, 1977, forwarding the minutes of the hearing and stating that the minutes would be presented for approval at the committee's meeting on September 20. DelCostello responded in a letter, but the minutes were approved without change. Under the collective-bargaining agreement, the committee's decision is final and binding on all parties.

On March 16, 1978, DelCostello filed this suit in the District of Maryland against the employer and the union. He

than the state arbitration statute of limitations would not have changed the outcome of the case. Hence, we declined to address the issue. 451 U. S., at 60, n. 2.

Justice Stewart, concurring in the judgment, would have reached the issue and would have applied § 10(b) rather than any state limitations period. *Id.*, at 65–71. See also *id.*, at 64–65 (BLACKMUN, J., concurring); but see *id.*, at 75–76, and nn. 8, 9 (STEVENS, J., concurring in part and dissenting in part).

[3] The employer contends that DelCostello's refusal to perform his work assignment was a "voluntary quit"; DelCostello contends that he was wrongfully discharged. The joint grievance committee upheld the employer's view.

alleged that the employer had discharged him in violation of the collective-bargaining agreement, and that the union had represented him in the grievance procedure "in a discriminatory, arbitrary and perfunctory manner," App. in No. 81–2386, p. 19, resulting in an unfavorable decision by the joint committee. Respondents asserted that the suit was barred by Maryland's 30-day statute of limitations for actions to vacate arbitration awards.[4] The District Court disagreed, holding that the applicable statute was the 3-year state statute for actions on contracts.[5] 510 F. Supp. 716 (1981). On reconsideration following our decision in *Mitchell*, however, the court granted summary judgment for respondents, concluding that *Mitchell* compelled application of the 30-day statute to both the claim against the employer and the claim against the union. 524 F. Supp. 721 (1981).[6] The Court of Appeals affirmed on the basis of the District Court's order. 679 F. 2d 879 (CA4 1982) (mem.).

## B

Donald C. Flowers and King E. Jones, respondents in No. 81–2408, were employed as craft welders by Bethlehem Steel Corp. and represented by petitioner Steelworkers Local 2602.[7] In 1975 and 1976 respondents filed several

---

[4] Md. Cts. & Jud. Proc. Code Ann. § 3–224 (1980).

[5] § 5–101.

[6] Respondents argue that DelCostello did not raise the argument below that the applicable limitations period is the 6-month period of § 10(b). He did raise the § 10(b) point perfunctorily in opposition to respondents' motion for reconsideration, however, App. in No. 81–2386, p. 264, and he briefed it more thoroughly in the Court of Appeals, *id.*, at 282–290. Respondents likewise addressed the § 10(b) issue fully on the merits in the Court of Appeals; they did not raise any contention that DelCostello had waived the assertion. Brief for Appellees in No. 81–2086 (CA4), pp. 41–45.

[7] The other petitioner is the United Steelworkers of America, with which the Local is affiliated. The two labor organizations will be treated as one party for purposes of this case. Bethlehem Steel Corp. was a defendant below but is not before this Court in the present proceeding.

grievances asserting that the employer had violated the collective-bargaining agreement by assigning certain welding duties to employees in other job categories and departments of the plant, with the result that respondents were laid off or assigned to noncraft work. The union processed the grievances through the contractually established procedure and, failing to gain satisfaction, invoked arbitration. On February 24, 1978, the arbitrator issued an award for the employer, ruling that the employer's job assignments were permitted by the collective-bargaining agreement.

Respondents filed this suit in the Western District of New York on January 9, 1979, naming both the employer and the union as defendants. The complaint alleged that the company's work assignments violated the collective-bargaining agreement, and that the union's "preparation, investigation and handling" of respondents' grievances were "so inept and careless as to be arbitrary and capricious," in violation of the union's duty of fair representation. App. in No. 81–2408, p. 10. The District Court dismissed the complaint against both defendants, holding that the entire suit was governed by New York's 90-day statute of limitations for actions to vacate arbitration awards.[8] The Court of Appeals reversed on the basis of its prior holding in *Mitchell* v. *United Parcel Service, Inc.*, 624 F. 2d 394 (CA2 1980), that such actions are governed by New York's 6-year statute for actions on contracts.[9] *Flowers* v. *Local 2602, United Steel Workers of America*, 622 F. 2d 573 (CA2 1980) (mem.). We granted certiorari and vacated and remanded for reconsideration in light of our reversal in *Mitchell*. *Steelworkers* v. *Flowers*, 451 U. S. 965 (1981). On remand, the Court of Appeals rejected the argument that the 6-month period of § 10(b) applies. Accordingly, following our decision in *Mitchell*, it applied the 90-day arbitration statute and affirmed the dismissal as to the employer. As to the union, however, the

---

[8] N. Y. Civ. Prac. Law § 7511(a) (McKinney 1980).

[9] § 213(2).

court reversed, concluding that the correct statute to apply was New York's 3-year statute for malpractice actions.[10]   671 F. 2d 87 (CA2 1982).

## C

In this Court, petitioners in both cases contend that suits under *Vaca* v. *Sipes*, 386 U. S. 171 (1967), and *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554 (1976), should be governed by the 6-month limitations period of § 10(b) of the National Labor Relations Act, 29 U. S. C. § 160(b).   Alternatively, the Steelworkers, petitioners in No. 81–2408, argue that the state statute for vacation of arbitration awards should apply to a claim against a union as well as to one against an employer.[11]   We granted certiorari in both cases and consolidated them for argument.   459 U. S. 1034 (1982).

## II

### A

As is often the case in federal civil law, there is no federal statute of limitations expressly applicable to this suit.   In such situations we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to "borrow" the most suitable statute or other rule of timeliness from some other source.   We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.[12]   "The implied absorption of State statutes of limitation

---

[10] § 214(6).

[11] DelCostello (petitioner in No. 81–2386) also contends that, if we decide that application of state law is appropriate, our decision in *Mitchell* should not be applied retroactively.   We need not reach this contention.

[12] In some instances, of course, there may be some direct indication in the legislative history suggesting that Congress did in fact intend that state statutes should apply.   More often, however, Congress has not given any express consideration to the problem of limitations periods.   In such cases, the general preference for borrowing state limitations periods could more aptly be called a sort of fallback rule of thumb than a matter of ascertaining legislative intent; it rests on the assumption that, absent some sound rea-

within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles." *Holmberg* v. *Armbrecht*, 327 U. S. 392, 395 (1946).[13]    See, *e. g.*, *Runyon* v.

son to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions.    See also *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 703–704 (1966).

Justice Stewart pointed out in *Mitchell* that this line of reasoning makes more sense as applied to a cause of action expressly created by Congress than as applied to one found by the courts to be implied in a general statutory scheme—especially when that general statutory scheme itself contains a federal statute of limitations for a related but separate form of relief.    451 U. S., at 68, n. 4 (opinion concurring in judgment); see also *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221, 228–229 (1958) (BRENNAN, J., concurring).    The suits at issue here, of course, are amalgams, based on both an express statutory cause of action and an implied one.    See *infra*, at 164–165, and n. 14.    We need not address whether, as a general matter, such cases should be treated differently; even if this action were considered as arising solely under § 301 of the Labor Management Relations Act, 29 U. S. C. § 185, the objections to use of state law and the availability of a well-suited limitations period in § 10(b) would call for application of the latter rule.

[13] Respondents in No. 81–2386 argue that the Rules of Decision Act, 28 U. S. C. § 1652, mandates application of state statutes of limitations whenever Congress has provided none.    The argument begs the question, since the Act authorizes application of state law only when federal law does not "otherwise require or provide."    As we recognized in *Hoosier, supra*, at 701, the choice of a limitations period for a federal cause of action is itself a question of federal law.    If the answer to that question (based on the policies and requirements of the underlying cause of action) is that a timeliness rule drawn from elsewhere in federal law should be applied, then the Rules of Decision Act is inapplicable by its own terms.    As we said in *United States* v. *Little Lake Misere Land Co.*, 412 U. S. 580 (1973):

"There will often be no specific federal legislation governing a particular transaction . . . ; here, for example, no provision of the . . . Act guides us to choose state or federal law in interpreting . . . agreements under the Act. . . . But silence on that score in federal legislation is no reason for limiting the reach of federal law . . . .    To the contrary, the inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts.    'At the very

160

*McCrary*, 427 U. S. 160, 180–182 (1976); *Chevron Oil Co.* v. *Huson*, 404 U. S. 97, 101–105 (1971); *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696 (1966); *Chattanooga Foundry* v. *Atlanta*, 203 U. S. 390 (1906); *Campbell* v. *Haverhill*, 155 U. S. 610 (1895).

least, effective Constitutionalism requires recognition of power in the federal courts to declare, as a matter of common law or "judicial legislation," rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress. In other words, it must mean recognition of federal judicial competence to declare the governing law in an area comprising issues substantially related to an established program of government operation.'" *Id.*, at 593, quoting Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. Pa. L. Rev. 797, 800 (1957).

See also Westen & Lehman, Is There Life for *Erie* After the Death of Diversity?, 78 Mich. L. Rev. 311, 352–359, and nn. 122 and 142, 368–370, 377–378, 380, n. 207, 381–385 (1980); n. 21, *infra.*

Respondents in No. 81–2386 rely on a few turn-of-the-century cases suggesting that the Rules of Decision Act compels application of state limitations periods. See also *post*, at 173, n. 1 (STEVENS, J., dissenting). These cases, however, predate our recognition in *Erie R. Co.* v. *Tompkins*, 304 U. S. 64 (1938), that "the purpose of the section was merely to make certain that, in all matters except those in which some federal law is controlling, the federal courts exercising jurisdiction in diversity of citizenship cases would apply as their rules of decision the law of the State, unwritten as well as written." *Id.*, at 72–73 (footnote omitted); see also Warren, New Light on the History of the Federal Judiciary Act of 1789, 37 Harv. L. Rev. 49, 81–88 (1923). Since *Erie*, no decision of this Court has held or suggested that the Act requires borrowing state law to fill gaps in federal substantive statutes. Of course, we have continued since *Erie* to apply state limitations periods to many federal causes of action; but we made clear in *Holmberg* v. *Armbrecht*, 327 U. S. 392, 394–395 (1946), that we do so as a matter of interstitial fashioning of remedial details under the respective substantive federal statutes, and not because the Rules of Decision Act or the *Erie* doctrine requires it. "The considerations that urge adjudication by the same law in all courts within a State when enforcing a right created by that State are hardly relevant for determining the rules which bar enforcement of [a] . . . right created not by a State legislature but by Congress." 327 U. S., at 394; see also *Guaranty Trust Co.* v. *York*, 326 U. S. 99, 101 (1945); *Board of Comm'rs* v. *United States*, 308

In some circumstances, however, state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.

> "[T]he Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. 'Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.'" *Occidental Life Ins. Co.* v. *EEOC*, 432 U. S. 355, 367 (1977), quoting *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 465 (1975).

---

U. S. 343, 349–352 (1939); *Hoosier*, 383 U. S., at 703–704; *id.*, at 709 (WHITE, J., dissenting); *Employees* v. *Westinghouse Corp.*, 348 U. S. 437, 463 (1955) (Reed, J., concurring).

We do not suggest that the *Erie* doctrine is wholly irrelevant to all federal causes of action. On the contrary, where Congress directly or impliedly directs the courts to look to state law to fill in details of federal law, *Erie* will ordinarily provide the framework for doing so. See, *e. g.*, *Commissioner* v. *Estate of Bosch*, 387 U. S. 456, 463–465 (1967) (applying *Erie* rules as to the proper source of state law in a tax case); 1A J. Moore, W. Taggart, A. Vestal, & J. Wicker, Moore's Federal Practice ¶ 0.325 (2d ed. 1982); 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4515 (1982); Westen & Lehman, *supra*. But, as *Holmberg* recognizes, neither *Erie* nor the Rules of Decision Act can now be taken as establishing a *mandatory* rule that we apply state law in federal interstices. Indeed, the contrary view urged by respondents cannot be reconciled with the numerous cases that have declined to borrow state law, see *infra*, at 162–163, nor with our suggestion in *Hoosier* that we might not apply state limitations periods in a different case, 383 U. S., at 705, n. 7, 707, n. 9.

Hence, in some cases we have declined to borrow state statutes but have instead used timeliness rules drawn from federal law—either express limitations periods from related federal statutes, or such alternatives as laches. In *Occidental*, for example, we declined to apply state limitations periods to enforcement suits brought by the Equal Employment Opportunity Commission under Title VII of the 1964 Civil Rights Act, reasoning that such application might unduly hinder the policy of the Act by placing too great an administrative burden on the agency. In *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221 (1958), we applied the federal limitations provision of the Jones Act to a seaworthiness action under general admiralty law. We pointed out that the two forms of claim are almost invariably brought together. Hence, "with an eye to the practicalities of admiralty personal injury litigation," *id.*, at 224, we held inapplicable a shorter state statute governing personal injury suits. Again, in *Holmberg*, we held that state statutes of limitations would not apply to a federal cause of action lying only in equity, because the principles of federal equity are hostile to the "mechanical rules" of statutes of limitations. 327 U. S., at 396.

*Auto Workers* v. *Hoosier Cardinal Corp.* was a straightforward suit under § 301 of the Labor Management Relations Act, 29 U. S. C. § 185, for breach of a collective-bargaining agreement by an employer. Unlike the present cases, *Hoosier* did not involve any agreement to submit disputes to arbitration, and the suit was brought by the union itself rather than by an individual employee. We held that the suit was governed by Indiana's 6-year limitations period for actions on unwritten contracts; we resisted the suggestion that we establish some uniform federal period. Although we recognized that "the subject matter of § 301 is 'peculiarly one that calls for uniform law,'" 383 U. S., at 701, quoting *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95, 103 (1962), we reasoned that national uniformity is of less importance when the

case does not involve "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it," 383 U. S., at 702. We also relied heavily on the obvious and close analogy between this variety of § 301 suit and an ordinary breach-of-contract case. We expressly reserved the question whether we would apply state law to § 301 actions where the analogy was less direct or the relevant policy factors different:

> "The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question. See, e. g., *Holmberg* v. *Armbrecht*, 327 U. S. 392 . . . ." 383 U. S., at 705, n. 7.

Justice Stewart, who wrote the Court's opinion in *Hoosier*, took this caution to heart in *Mitchell*. He concurred separately in the judgment, arguing that the factors that compelled adoption of state law in *Hoosier* did not apply to suits under *Vaca* and *Hines*, and that in the latter situation we should apply the federal limitations period of § 10(b). 451 U. S., at 65–71. As we shall explain, we agree.

## B

It has long been established that an individual employee may bring suit against his employer for breach of a collective-bargaining agreement. *Smith* v. *Evening News Assn.*, 371 U. S. 195 (1962). Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. *Republic Steel Corp.* v. *Maddox*, 379 U. S. 650 (1965); cf. *Clayton* v. *Automobile Workers*, 451 U. S. 679 (1981)

(exhaustion of intraunion remedies not always required). Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement. See *W. R. Grace & Co.* v. *Rubber Workers*, 461 U. S. 757, 764 (1983); *Steelworkers* v. *Enterprise Corp.*, 363 U. S. 593 (1960). In *Vaca* and *Hines*, however, we recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *Vaca* v. *Sipes*, 386 U. S. 171 (1967); *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554 (1976); *United Parcel Service, Inc.* v. *Mitchell*, 451 U. S. 56 (1981); *Bowen* v. *USPS*, 459 U. S. 212 (1983); *Czosek* v. *O'Mara*, 397 U. S. 25 (1970). Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.[14] "Yet the two claims are inextricably interde-

---

[14] The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca* v. *Sipes*, 386 U. S. 171, 177 (1967). See generally *Steele* v. *Louisville & N. R. Co.*, 323 U. S. 192 (1944); *Ford Motor Co.* v. *Huffman*, 345 U. S. 330, 337 (1953); *Syres* v. *Oil Workers*, 350 U. S. 892 (1955); *Humphrey* v. *Moore*, 375 U. S. 335, 342 (1964);

pendent. 'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'" *Mitchell, supra,* at 66–67 (Stewart, J., concurring in judgment), quoting *Hines, supra,* at 570–571. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach-of-contract suit under § 301, as was *Hoosier,* but a hybrid § 301/fair representation claim, amounting to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].'" *Mitchell, supra,* at 66 (Stewart, J., concurring in judgment), quoting *Hoosier,* 383 U. S., at 702. Also unlike the claim in *Hoosier,* it has no close analogy in ordinary state law. The analogies suggested in *Mitchell* both suffer from flaws, not only of legal substance, but more important, of practical application in view of the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation.

In *Mitchell,* we analogized the employee's claim against the employer to an action to vacate an arbitration award in a commercial setting. We adhere to the view that, as between the two choices, it is more suitable to characterize the claim that way than as a suit for breach of contract. Nevertheless, the parallel is imperfect in operation. The main difference is that a party to commercial arbitration will ordinarily be represented by counsel or, at least, will have some experience in matters of commercial dealings and contract negotiation. Moreover, an action to vacate a commercial arbitral award will rarely raise any issues not already presented and contested in the arbitration proceeding itself. In the labor set-

R. Gorman, Labor Law 695–728 (1976). The duty stands "as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca, supra,* at 182.

ting, by contrast, the employee will often be unsophisticated in collective-bargaining matters, and he will almost always be represented solely by the union. He is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit. Yet state arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards.[15] Concededly, the very brevity of New York's 90-day arbitration limitations period was a major factor why, in *Mitchell*, we preferred it to the 6-year statute for breach of contract, 451 U. S., at 63–64; but it does not follow that because 6 years is too long, 90 days is long enough. See also *Hoosier, supra,* at 707, n. 9. We conclude that state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine.[16]

Moreover, as JUSTICE STEVENS pointed out in his opinion in *Mitchell*, analogy to an action to vacate an arbitration

---

[15] The majority of States require filing within 90 days (22 States and the District of Columbia) or 3 months (7 States). See also 9 U. S. C. § 12. Only two States have longer periods—one for one year, the other for 100 days. Other statutes allow 30 days (6 States), 20 days (3 States), or 10 days (2 States). The remainder of the States either impose time limits based on terms of court or have no statutory provision on point.

[16] Besides its brevity, use of an arbitration limitations period raises knotty problems of categorization and consistency. Application of an arbitration statute seems straightforward enough when a grievance has run its full course, culminating in a formal award by a neutral arbitrator. But the union's breach of duty may consist of a wrongful failure to pursue a grievance to arbitration, as in *Vaca* and *Bowen*, or a refusal to pursue it through even preliminary stages. The parallel to vacation of an arbitral award seems tenuous at best in these situations; it is doubtful that many state arbitration statutes would themselves cover such a case in a commercial setting. Yet if it were thought necessary to apply different state rules to these different possibilities, the result would be radical variation in the treatment of cases that are not significantly different with regard to the principles of *Vaca, Hines,* and *Mitchell.* Moreover, the difficulty of de-

award is problematic at best as applied to the employee's claim against the union:

> "The arbitration proceeding did not, and indeed, could not, resolve the employee's claim against the union. Although the union was a party to the arbitration, it acted only as the employee's representative; the [arbitration panel] did not address or resolve any dispute between the employee and the union . . . . Because no arbitrator has decided the primary issue presented by this claim, no arbitration award need be undone, even if the employee ultimately prevails." 451 U. S., at 73 (opinion concurring in part and dissenting in part) (footnotes omitted).

JUSTICE STEVENS suggested an alternative solution for the claim against the union: borrowing the state limitations period for legal malpractice. *Id.*, at 72–75; see *post*, at 174 (STEVENS, J., dissenting); *post*, at 175 (O'CONNOR, J., dissenting). The analogy here is to a lawyer who mishandles a commercial arbitration. Although the short limitations period for vacating the arbitral award would protect the interest in finality of the opposing party to the arbitration, the misrepresented party would retain his right to sue his lawyer for malpractice under a longer limitations period. This solution is admittedly the closest state-law analogy for the claim against the union. Nevertheless, we think that it too suffers from objections peculiar to the realities of labor relations and litigation.

The most serious objection is that it does not solve the problem caused by the too-short time in which an employee could sue his employer under borrowed state law. In a commercial setting, a party who sued his lawyer for bungling an

---

tecting and mustering evidence to show the union's breach of duty may be even greater in these situations, and it may not be an easy task to ascertain when the cause of action accrues—obviously a matter of great importance when the statute of limitations may be as short as 30 days.

arbitration could ordinarily recover his entire damages, even if the statute of limitations foreclosed any recovery against the opposing party to the arbitration. The same is not true in the § 301/fair representation setting, however. We held in *Vaca*, and reaffirmed this Term in *Bowen*, that the union may be held liable *only* for "increases if any in [the employee's] damages caused by the union's refusal to process the grievance." 386 U. S., at 197–198; 459 U. S., at 223–224; see *Czosek*, 397 U. S., at 29. Thus, if we apply state limitations periods, a large part of the damages will remain uncollectible in almost every case unless the employee sues within the time allotted for his suit against the employer.[17]

Further, while application of a short arbitration period as against employers would endanger employees' ability to recover most of what is due them, application of a longer malpractice statute as against unions would preclude the relatively rapid final resolution of labor disputes favored by federal law—a problem not present when a party to a commercial arbitration sues his lawyer. In No. 81–2408, for example, the holding of the Court of Appeals would permit a suit as long as three years after termination of the grievance proceeding; many States provide for periods even longer.[18] What we said in *Mitchell* about the 6-year contracts statute urged there can as easily be said here:

> "It is important to bear in mind the observations made in the *Steelworkers Trilogy* that 'the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. . . . The processing . . . machinery is actually a vehicle by which meaning and content are given to the collective

---

[17] Inability to sue the employer would also foreclose use of such equitable remedies as an order to arbitrate. See *Vaca*, 386 U. S., at 196.

[18] One State's limitations period for legal malpractice is 10 years. Other statutes allow six years (10 States); five years (4 States); four years (5 States); three years (10 States and the District of Columbia); two years (16 States); and one year (4 States).

bargaining agreement.' *Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U. S. 574, 581 (1960). Although the present case involves a fairly mundane and discrete wrongful-discharge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union . . . . This system, with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision which has given 'meaning and content' to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as [three] years later." 451 U. S., at 63–64.

See also *Hoosier*, 383 U. S., at 706–707; *Machinists* v. *NLRB*, 362 U. S. 411, 425 (1960).[19]

These objections to the resort to state law might have to be tolerated if state law were the only source reasonably available for borrowing, as it often is. In this case, however, we have available a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here—a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels.[20] We refer to § 10(b) of the National Labor Relations Act, which establishes a 6-month period for making charges of unfair labor practices to the NLRB.[21]

---

[19] The solution proposed by JUSTICE STEVENS also has the unfortunate effect of establishing different limitations periods for the two halves of a § 301/fair representation suit. A very similar consideration led us to reject borrowing of a state statute in *McAllister* v. *Magnolia Petroleum Co.*, 357 U. S. 221 (1958). See also *Vaca*, *supra*, at 186–188, and n. 12; *Clayton* v. *Automobile Workers*, 451 U. S. 679, 694–695 (1981).

[20] This is not to say that the sole options available are a federal statute of limitations or a state one. As *Holmberg* and *Occidental* show, see *supra*, at 161, 162, we have sometimes concluded that Congress' intention can best be carried out by imposing no predefined limitations period at all.

[21] JUSTICE STEVENS suggested in *Mitchell* that use of § 10(b) is inappropriate because there is no indication in its language or history that Con-

The NLRB has consistently held that all breaches of a union's duty of fair representation *are* in fact unfair labor practices. *E. g., Miranda Fuel Co.*, 140 N. L. R. B. 181 (1962), enf. denied, 326 F. 2d 172 (CA2 1963). We have twice declined to decide the correctness of the Board's position,[22] and we need not address that question today. Even if not all breaches of the duty are unfair labor practices, however, the family resemblance is undeniable, and indeed there is a substantial overlap. Many fair representation claims (the one in No. 81–2386, for example) include allegations of discrimination based on membership status or dissident views, which would be unfair labor practices under § 8(b)(1) or (2). Aside from these clear cases, duty of fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions—as are virtually all unfair labor practice charges made by workers against unions. See generally R. Gorman, Labor Law 698–701 (1976). Similarly, it may be the case that alleged violations by an employer of a collective-bargaining agreement will also amount to unfair labor practices. See *id.*, at 729–734.

At least as important as the similarity of the rights asserted in the two contexts, however, is the close similarity of

---

gress intended the section to be applied in the present context. 451 U. S., at 75–76, and nn. 8, 9 (opinion concurring in part and dissenting in part). With all respect, we think that this observation, while undoubtedly correct, is beside the point. The same could be said with equal or greater accuracy about the intent of the New York and Maryland Legislatures when they enacted their respective arbitration or malpractice statutes of limitations. See *Occidental Life Ins. Co.* v. *EEOC*, 432 U. S. 355, 367 (1977); n. 12, *supra*. In either situation we are applying a statute of limitations to a different cause of action, not because the legislature enacting that limitations provision intended that it apply elsewhere, but because it is the most suitable source for borrowing to fill a gap in federal law. See also *Mitchell*, 451 U. S., at 61, n. 3; n. 13, *supra*.

[22] *Vaca, supra*, at 186; *Humphrey*, 375 U. S., at 344; see *Mitchell*, 451 U. S., at 67–68, n. 3 (Stewart, J., concurring in judgment).

the considerations relevant to the choice of a limitations period. As Justice Stewart observed in *Mitchell:*

"In § 10(b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the 'final and binding' determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the . . . agreement and the private settlement of disputes under it.' *Hoosier*, 383 U. S., at 702. Accordingly, '[t]he need for uniformity' among procedures followed for similar claims, *ibid.*, as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adoption of § 10(b) of the NLRA as the appropriate limitations period for lawsuits such as this." 451 U. S., at 70–71 (opinion concurring in judgment) (footnote omitted).

We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. See, *e. g., Mitchell*, 451 U. S., at 61, n. 3. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods. Never-

theless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law. See Part II–A, *supra*. As Justice Goldberg cautioned: "[I]n this Court's fashioning of a federal law of collective bargaining, it is of the utmost importance that the law reflect the realities of industrial life and the nature of the collective bargaining process. We should not assume that doctrines evolved in other contexts will be equally well adapted to the collective bargaining process." *Humphrey* v. *Moore*, 375 U. S. 335, 358 (1964) (opinion concurring in result).

## III

In No. 81–2408, it is conceded that the suit was filed more than 10 months after respondents' causes of action accrued. The Court of Appeals held the suit timely under a state 3-year statute for malpractice actions. Since we hold that the suit is governed by the 6-month provision of § 10(b), we reverse the judgment.

The situation is less clear in No. 81–2386. Depending on when the joint committee's decision is thought to have been rendered, the suit was filed some seven or eight months afterwards. Petitioner DelCostello contends, however, that certain events operated to toll the running of the statute of limitations until about three months before he filed suit. Since the District Court applied a 30-day limitations period, it expressly declined to consider any tolling issue. 524 F. Supp., at 725. Hence, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

For the past century federal judges have "borrowed" state statutes of limitations, not because they thought it was a sen-

sible form of "interstitial law making," but rather because they were directed to do so by the Congress of the United States.[1]

Today the Court holds that the Rules of Decision Act does not determine the result in these cases, because it believes that a separate federal law, growing out of "the policies and requirements of the underlying cause of action," *ante*, at 159, n. 13, "otherwise require[s] or provide[s]." The Court's opinion sets forth a number of reasons why it may make good sense to adopt a 6-month statute of limitations, but nothing in that opinion persuades me that the Constitution, treaties, or statutes of the United States "require or provide" that this particular limitations period must be applied to this case.[2]

---

[1] In 1789 the First Congress enacted the Rules of Decision Act (Act), Rev. Stat. § 721, 1 Stat. 92, plainly stating:

"That the laws of the several states, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply."

In 1895, construing that Act, we held that state statutes of limitations provided the relevant rules of decision in patent infringement actions, explaining:

"That this section [Rev. Stat. § 721] embraces the statutes of limitations of the several States has been decided by this court in a large number of cases, which are collated in its opinion in *Bauserman* v. *Blunt*, 147 U. S. 647 . . . . Indeed, to no class of state legislation has the above provision been more steadfastly and consistently applied than to statutes prescribing the time within which actions shall be brought within its jurisdiction." *Campbell* v. *Haverhill*, 155 U. S. 610, 614.

Accord, *McClaine* v. *Rankin*, 197 U. S. 154 (1905). In response to the suggestion that the Act was not intended to govern nondiversity cases raising federal questions—such as patent suits or suits under the National Labor Relations Act—we bluntly observed that "[t]he section itself neither contains nor suggests such a distinction." 155 U. S., at 616.

[2] When the Court recognized the cause of action in *Vaca* v. *Sipes*, 386 U. S. 171 (1967), the majority explained: "We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions . . . unlimited discretion to deprive injured employees of all remedies for breach of con-

Congress has given us no reason to depart from our settled practice, grounded in the Rules of Decision Act, of borrowing analogous state statutes of limitation in cases such as this. For the reasons set forth in my separate opinion in *United Parcel Service, Inc.* v. *Mitchell*, 451 U. S. 56, 71 (1981), I believe that in a suit for a breach of the duty of fair representation, the appropriate "laws of the several states" are the statutes of limitations governing malpractice suits against attorneys. I would apply those laws to resolve the worker-union disputes in these two cases. And I would continue to abide by our holding in *Mitchell* in resolving the employee-employer dispute presented in No. 81–2386.

For these reasons, I respectfully dissent.

JUSTICE O'CONNOR, dissenting.

As the Court recognizes, "resort to state law [is] the norm for borrowing of limitations periods." *Ante*, at 171. When federal law is silent on the question of limitations, we borrow state law in the belief that, given our longstanding practice and congressional awareness of it, we can safely assume, in the absence of strong indications to the contrary, that Congress intends by its silence that we follow the usual rule.[1]

---

tract." *Id.*, at 186. But nothing in the language, structure, or legislative history of the National Labor Relations Act compels the *further* conclusion that Congress intended the federal judiciary to abandon the traditional practice of borrowing state statutes of limitations when no federal statute directly applies. Saying that a statute impliedly creates a cause of action is not the same thing as saying that it impliedly commands the courts to abandon the standard procedure for choosing limitations periods and instead to borrow a period that Congress established for a different purpose.

[1] I believe, basically for the reasons given by the Court, *ante*, at 159–161, n. 13, that our practice of borrowing state periods of limitations depends largely on this general guide for divining congressional intent. See, *e. g.*, *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 704 (1966); *Holmberg* v. *Armbrecht*, 327 U. S. 392, 395 (1946). I agree with the Court that the Rules of Decision Act, 28 U. S. C. § 1652, only puts the question, for it simply requires application of state law unless federal law applies. See *ante*, at 159–161, n. 13. Therefore, I am unable to join JUSTICE STEVENS' dissent.

In *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696 (1966), we applied the "norm" to a suit under § 301 of the Labor Management Relations Act, 29 U. S. C. § 185. I see no reason in these cases to depart from our usual practice of borrowing state law, for we have no contrary indications strong enough to outweigh our ordinary presumption that Congress' silence indicates a desire that we follow the ordinary rule. As a result, I would look to state law for a limitations period. For the reasons given by JUSTICE STEVENS in his separate opinion in *United Parcel Service, Inc.* v. *Mitchell*, 451 U. S. 56, 72–74 (1981), I think that a malpractice action against an attorney provides the closest analogy to an employee's suit against his union for breach of the duty of fair representation, and I would apply the State's statute of limitations for such an action here. In DelCostello's action against his employer, I, like JUSTICE STEVENS, would follow *Mitchell*.[2]

My disagreement with the Court arises because I do not think that federal law implicitly rejects the practice of borrowing state periods of limitations in this situation.

[2] It is quite appropriate to apply *Mitchell* retroactively. *Mitchell* did not represent a "clear break" with past law, see *Mitchell*, 451 U. S., at 61–62, application of its rule in this case would further the goal of promoting early finality for arbitral awards, *id.*, at 63, and there is no inequity in applying the rule here. See *Lawson* v. *Truck Drivers, Chauffeurs & Helpers*, 698 F. 2d 250, 254 (CA6 1983); see generally *Chevron Oil Co.* v. *Huson*, 404 U. S. 97 (1971).