John DRUM, Plaintiff,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY and the New York Post Corp., Defendants.

No. 81 Civ. 3399 (RLC).

United States District Court, S.D. New York.

Sept. 21, 1983.

Jaffin, Schneider & Conrad, New York City, for plaintiff; Michael F. Schwartz, New York City, of counsel.

Lippman & Lippman, New York City, for Newspaper and Mail Deliverers' Union; Marshall E. Lippman, New York City, of counsel.

Squadron, Ellenoff, Plesent & Lehrer, New York City, for New York Post; Jonathan L. Sulds and Eugenie C. Gavenchak, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This action arises from plaintiff's heretofore unsuccessful efforts to obtain supplemental and other benefits from his employer, the New York Post ("The Post") which were allegedly due him under his union's collective bargaining agreement with the Post. Drum, who had been employed by the Post since 1966 as a chauffeur/routeman, was injured in an automobile accident while collecting money for papers previously delivered on his route. At the time the accident occurred, October 4, 1978, Drum and other members of the Newspaper and Mail Deliverers' Union ("The Union") were on strike and had been since August 8, 1978. The strike ended on October 5, 1978. On October 12, 1978, plaintiff filled out and returned forms DB450 to the Post in order to receive compensation for his accident. Plaintiff's Trial Memorandum at 3. The Post filed a claim for disability insurance benefits for plaintiff with the Zurich Insurance Company ("the company") on November 6, 1978. *Id.* The claim was rejected by the company on November 17, 1978. *Id.*

Plaintiff's daughter then contacted Marshall Lippman, general counsel for the Union, and submitted Drum's unemployment insurance book to Lippman as proof of her father's eligibility for unemployment insurance benefits. *Id.* at 4. Plaintiff contends that Lippman never forwarded this document to the company.

Plaintiff alleges that, instead, Lippman wrote to the company and asserted that Drum was entitled to disability benefits and that the company had erroneously rejected the claim. *Id.* On May 20, 1979, the Post prepared a second copy of Form DB450 and changed the date of the employer's signature to May 2, 1979. This form was filed with the Workmen's Compensation and Disability Benefits Bureau which, on June 12, 1979, rejected it on the grounds that the claim had not been filed within twenty six weeks of the date that the disability began. *Id.* at 5.

Unable to resolve his problem, plaintiff alleges that he requested an Appeals Board Hearing of his grievance in March, 1979. In a letter dated September 17, 1979, addressed to Herbert Haber, an arbitrator, Lippman requested a hearing on the disability benefits to which Drum was allegedly entitled. *Id.* The parties dispute whether plaintiff's claim was ever formally heard by the Appeals Board. Plaintiff's Trial Memorandum at 7; Defendant Post's Trial Memorandum at 3. The Post contends that plaintiff's case was informally discussed by the Appeals Board while they were in the process of arbitrating an unrelated matter. Post's Trial Memorandum at 3. According to the Post, the Board informally agreed that Drum was entitled to benefits and that Haber later set forth these conclusions in a letter to plaintiff. *Id.* at 5. Plaintiff, on the other hand, argues that the Appeals Board was formally convened on December 10, 1979, for the purpose of hearing his grievance and that the outcome of the meeting was the unanimous conclusion by the Board that his claim had been improperly denied. Plaintiff's Trial Memorandum at 6.

The parties do not dispute that in or about March, 1980, plaintiff informed the Union that he no longer wanted Lippman to pursue his claims and that he would retain private counsel to continue his attempt to obtain benefits. *Id.* at 5. Plaintiff obtained an attorney in April, 1980.

The instant action was commenced on June 3, 1981, against the Post for alleged breach of the collective bargaining agreement and against the Union for breach of its duty of fair representation of the plaintiff in his efforts to obtain compensation for the October 4, 1978 accident. The Post and the Union have moved for summary judgment, pursuant to Rule 56, F.R.Civ.P. They contend that this court lacks subject matter jurisdiction because Drum has failed to exhaust his administrative remedies and because he has failed to demonstrate a breach of the collective bargaining agreement. Defendants further allege that even if this court finds subject matter jurisdiction, the action is barred by the statute of limitations.

■ In a suit by an employee against his employer for breach of the collective bargaining agreement and against the union for breach of its duty of fair representation, subject matter jurisdiction is cognizable under 29 U.S.C. § 185, Section 301 of the Labor Management Relations Act; *Castaneda v. Dura-Vent-Corp.*, 648 F.2d 612, 616 (9th Cir.1981). An employee is also required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *Del Costello v. International Brotherhood of Teamsters, et al*, — U.S. —, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *Torres v. Airborne Freight Corp.*, 528 F.Supp. 1014, 1016 (E.D.N.Y.1981).

■ The collective bargaining agreement provides that any grievance arising from it must first be heard by a Joint Standing Committee or by the Appeals Board within thirty days after the circumstances giving rise to the dispute. Section 16, ¶ 1.08 of the Collective Bargaining Agreement be-

tween the Post and the Union. The parties dispute whether a formal Appeals Board Hearing pursuant to the specifications in the collective bargaining agreement[1] was ever held. Hence, the issue is not susceptible to a motion for summary judgment.

Plaintiff next contends that the Post breached the following sections of a memorandum incorporated in the collective bargaining agreement:

> With reference to the 180 day requirement contained in The Collective Bargaining Agreement for the high scale, and in the Title VII Consent Decree for the high scale, it is understood that:
>
> For the period of the labor dispute commencing on August 9, 1978, the employees will receive credit toward the 180 days based on the equal number of days immediately prior to the dispute. Any employee *on vacation, workmen's compensation, no fault, or State Disability during that time period* will have that time period counted as shifts worked for that period. (emphasis added)
>
> (b) For determining any other eligibility requirement or credit based upon days or shifts worked, for example but not limited to vacation, personal leave, sick leave and disability coverage, the same formula shall be applied.

Drum argues that the clause which allows time that an employee is receiving no fault insurance to be counted towards the "180 day requirement," impliedly allows an employee who obtains no fault insurance to be automatically eligible for any other supplemental benefits provided under the collective bargaining agreement. Plaintiff received no fault insurance benefits following his October 4, 1978 accident.

■ His argument fails on two grounds. First, a close reading of the memorandum in question reveals that it was designed as an amnesty provision for striking workers

in order to ensure that they would receive credit towards vacation and wage benefits for the time that they were on strike. Sections 13A–1 and 13B–1 of the collective bargaining agreement provide a scale of wage rates for workers who have been employed for more than 180 days and a table for calculating vacation days based on the number of days worked. For the striking workers, the amount of credit received towards the 180 days was to be based on the number of shifts worked during the period immediately preceding the strike. Any worker who was receiving no fault or workmen's compensation insurance *for the period preceding the strike*, that is, the period from which eligibility for the 180 day requirement would be calculated, would have the days that he or she received no fault or workmen's compensation insurance counted as shifts worked for determining whether the employee had been employed for at least 180 days.

■ Second, even if credence were given to Drum's argument, the memorandum would not apply to his situation since it covered only those workers who obtained no fault insurance during the strike, e.g. from August 9-October 5, 1978. Any benefits which Drum received were concededly after the termination of the strike.

Finally, even if we assume subject matter jurisdiction, the case is barred by the statute of limitations. The Supreme Court in *Del Costello v. International Brotherhood, supra,* 103 S.Ct. at 2281, recently concluded that in an action brought under section 301 of the Labor Management Relations Act by an employee against his employer for breach of the collective bargaining agreement and against his union for breach of its duty of fair representation, the limitations period would be six months,

---

1. The collective bargaining agreement provides that: "All grievances, differences and disputes arising out of the interpretation or application of this Agreement which cannot be settled at the plant level are to be referred in writing ... to the Joint Standing Committee and/or the Appeals Board within ... (30) days after the griev-

ing party knew, or with reasonable diligence should have known, of the existence of the facts or circumstances giving rise to the grievance..." Section 16 ¶ 1.08 of Agreed Upon Language changes in Collective Bargaining Agreement between the Newspaper and Mail Deliverers' Union of N.Y. and the New York Post.

the time provided for in Section 10(b) of the National Labor Relations Act.

The Court reasoned that the prior practice of borrowing state limitations periods in analogous cases would not be appropriate where a federal statute of limitations such as that in Section 10(b) existed, which was designed to accommodate the same types of interests which were at stake in a section 301 suit. *Id.* 103 S.Ct. at 2293. Thus, the Court concluded that if the employee's action accrued more than six months before the suit was filed, the case would be time-barred.

■ Reading the facts most favorably to the plaintiff, his action accrued at the latest in March 1980, after he informed the Union that he was unhappy with the manner in which they were handling his claim and that he would thereafter retain private counsel. Plaintiff, nonetheless, waited until June 1981, more than a year later to bring the instant action. Under *Del Costello*, plaintiff's claim is barred by the statute of limitations. Accordingly, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.