OPINION OF THE COURT
JORDAN, Circuit Judge.
Appellant Gary Harkins apjDeals an order of the United States District Court for the Eastern District of Pennsylvania granting summary judgment in favor of Appellees United States Steel Corporation (“U.S. Steel”)[1] and United Steelworkers of America, Local Union 4889 (“USW”) on his claim under § 301 of the Labor Relations Management Act, 29 U.S.C. § 185. Har-kins claims that U.S. Steel violated the collective bargaining agreement when it denied him an advancement opportunity and gave it instead to Thomas Mulé. More particularly, he says that because he is more qualified for the position than Mulé and has more seniority, it was wrong for U.S. Steel to give Mulé the job. Har-kins also claims that USW breached its duty of fair representation by mishandling the grievance he filed with USW after U.S. Steel denied him the position. Because there are no genuine issues of material fact and Appellees are entitled to judgment as a matter of law, we will affirm.
I. Background

A. U.S. Steel, USW, and the Collective Bargaining Agreement

U.S. Steel owns and operates steelmak-ing plants, including the Fairless Works facility in Fairless Hills, Pennsylvania. USW is a local union of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Sendee Workers International Union, and represents hourly production and maintenance workers at U.S. Steel’s Fairless Works plant.
On May 20, 2003, U.S. Steel and USW entered into a collective bargaining agreement, which they refer to as the 2003 Basic Labor Agreement (“BLA”). The BLA governs the process for awarding jobs within the Fairless Works plant. Pursuant to § E.7 of the BLA, when a job becomes available, U.S. Steel must post a bid sheet throughout the plant, and employees can apply for the job by signing the bid sheet. U.S. Steel awards the bid in accordance with § E.l.c of the BLA, which states:
In all cases of promotions, decreases in force and recalls after layoffs, the following factors shall be considered:
(1) ability to perform the work and physical fitness; and
(2) Plant Continuous Service (Plant Service).
Where factor (1) is relatively equal between employees, Plant Service shall be the determining factor.
(App. at 221.) Thus, when multiple employees apply for the same position, U.S. Steel first considers the relative ability of each employee to perform the work, and the most qualified employee is awarded the position, regardless of seniority. Only when the abilities of competing employees are relatively equal does seniority become the determining factor.

B. Walter Hartel and Job Bid No. GH-2006-02

Walter Hartel was a systems repairman who held the title of Maintenance Technician (Electrical) and was one of the most knowledgeable and experienced employees in the “Galvanized Line” Maintenance Department at the Fairless Works plant. Hartel was particularly known for his expertise in electronics. When the managers of the Maintenance Department learned, in *701 early 2006, that Hartel would soon be retiring, they conveyed to Susanna Show, the Staff Supervisor of Personnel, and Preston Henderson, the Manager of Employee Relations, the importance of replacing Hartel with someone having significant electronics experience. Accordingly, when U.S. Steel sought to replace Hartel by posting Job Bid No. GH-2006-02 for the position of “Maintenance Technician (Electrical),” the bid sheet stated that “EMPLOYEE MUST HAVE ELECTRICAL/ELECTRONIC EXPERIENCE.” Harkins and Thomas Mulé were among the four employees who signed the bid sheet.

C. Qualifications of Mulé and Harkins

1. Thom,as Mulé

Thomas Mulé is a member of the USW and was hired by U.S. Steel in 1987 as an Electronic Repairman. When Mulé was hired, he was required to take the systems repair test as an prerequisite for the Electronic Repairman job. The systems re-pah[1] test assesses knowledge of electronics and electrical subjects, motors, instrumentation, and physics. At the time, U.S. Steel had two groups of electronics related repairmen positions: the Electronic Repairman, and the Instrumentation Repairman. In 1988, U.S. Steel decided to merge the two positions. Thus, the Instrument Repairmen were cross-trained to learn electronics repairs and the Electronic Repairmen were cross trained to learn instrument repairs. Once the individuals had training and knowledge in both areas, the groups were formally merged into one group called Systems Repairmen. In order to become a Systems Repairman at that time, all employees had to take the systems repair test.
Mulé worked as a Systems Repairman until 1991, when he was laid off. He was recalled in 1994 and again worked in that same position. During both of those periods with U.S. Steel, Mulé worked in the Maintenance Department with Walter Hartel. Mulé was again laid off in 2001. At the time of his layoff, he was a Systems Repairman and had worked as such during the entire length of his employment with the exception of the short period of time when he initially worked as an Electronic Repairman.

2. Gary Harkins

Harkins is also a member of the USW and began his employment with U.S. Steel in 1973. At the time Harkins applied to be considered for Job Bid No. GH-2006-02, he was an Operating Technician with significant electrical expeiience but limited electronics experience, and he had never worked as a Systems Repairman. Early in his career at the Fairless Works facility, Harkins worked on the production line in the sheet and tin division. From 1989 through 1990, he attended the Electrical Learners Program at Bucks County Community College, where he took classes entitled Principles of Electronics, Industrial Electronics, Introduction to Digital Systems, Electronic Circuits, and Electrical Circuit Analysis. Harkins became a Motor Inspector on the so-called “Pickle Line,” where his responsibilities included repairs, preventative maintenance, and “[a]ny and all jobs electrical.” (App. at 20.) He also did some electronics work at the plant.
Harkins has never worked as an Electronic Repairman, Instrument Repairman, or as a Systems Repairman. Furthermore, Harkins never worked in the Maintenance Department with Walter Hartel. Harkins passed the op-teeh test, but has never taken the systems repair test. The op-tech test differs significantly from the systems repair test in that it measures electrical ability, whereas the systems repair test measures electronics ability, *702 which, according to the record, is a distinction with a difference.

D. U.S. Steel Awards Bid to Mulé

On February 21, 2006, U.S. Steel announced that it had awarded Job Bid No. GH-2006-02 to Mulé. The decision to award the bid to Mulé was made by Preston Henderson, the company’s Employee Relations manager. Based upon his knowledge of Harkins’s work history and Mulé’s work history, Henderson believed that Harkins had a small amount of electronics experience, but that Mulé “had significant electronic experience.” (App. at 82.) Indeed, Mulé had previously worked in that field with Mr. Hartel, the man being replaced. In comparing Mulé’s and Harkins’s experience, Henderson felt that Mulé had significantly greater relevant experience than Harkins. Given the impending departure of Mr. Hartel and the need to replace him with someone who had electronics experience, Henderson determined “Mulé fit that bill.” (Id.) Therefore, on February 21, 2006, Job Bid No. GH-2006-02 was officially awarded to Mulé.
After the bid was awarded, Harkins approached USW about filing a grievance based on his seniority and his belief that he was at least as qualified for the position as Mulé. The USW filed a grievance on Harkins’s behalf on February 27, 2006, which was denied by management at U.S. Steel at steps one and two of the grievance procedure outlined in the BLA. U.S. Steel maintained that Mulé’s qualifications were superior to those possessed by Harkins. At that point in the grievance proceedings, USW believed it could not win in arbitration without more evidence of Harkins’s qualifications. Therefore, in an attempt to show that Harkins did in fact possess electronics knowledge comparable to that of Mulé’s, USW proposed to U.S. Steel that Harkins be allowed to take the systems repair test. Harkins has not taken the test, and USW has not taken any further action on the grievance, again due to its belief that it would be unsuccessful in arbitration without further evidence of Har-kins’s qualifications.

E. Procedural History

On December 10, 2007, Harkins filed the complaint in this case against U.S. Steel and USW under Section 301 of the Labor Management Relations Act (the “Act”), 29 U.S.C. § 185. Harkins alleges that U.S. Steel breached the BLA by giving Mulé the job over him and that USW breached its duty of fair representation by mishandling his grievance. Following discovery and briefing, the District Court granted summary judgment in favor of U.S. Steel and USW. The Court concluded that a reasonable jury could not find that a breach of the BLA had occurred. Consequently, the Court found it unnecessary to decide whether USW had handled Har-kins’s grievance properly. Harkins filed a motion for reconsideration, which the District Court denied. Harkins filed this timely appeal on February 25, 2009.
II. Discussion[2]
We exercise plenary review over an appeal from a grant of summary judgment, which means we apply the same standard used by the District Court. Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 369 (3d Cir.2001). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. (citing Fed. R. Civ. Proc. 56(c)). “In making this determination, we *703 must consider the evidence in the record in the light most favorable to the nonmoving party.” Id.
As this case involves both a claim for breach of a collective bargaining agreement against an employer and a claim for breach of the duty of fair representation against the union, it is considered a hybrid claim under Section 301 of the Act. Del-Costello v. Int’l Bhd. of Teamsters, 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Harkins cannot prevail against either U.S. Steel or USW on his hybrid claim unless he can prove both that U.S. Steel violated the collective bargaining agreement and that USW breached its duty of fair representation. Id. at 164-65, 103 S.Ct. 2281.
The District Court properly concluded that Harkins did not produce enough evidence to allow a reasonable jury to find that U.S. Steel had breached the BLA. The evidence shows that U.S. Steel was looking to replace Hartel with someone who had significant knowledge and experience in the electronics used at the plant. The record plainly demonstrates that Mulé had greater electronics knowledge and experience than Harkins. For example, unlike Harkins, Mulé had been a Systems Repairman, worked under the supervision of Hartel, and passed the systems repair test. Although Harkins had taken electronics courses through U.S. Steel’s Electrical Learner’s Program, he has never worked as a Systems Repairman, never worked under the supervision of Hartel, and has never passed the systems repair test. Thus, despite an admirable investment of time and effort to learn about electrical and electronics issues, Harkins qualifications in electronics were not equal to Mulé’s. Because the BLA specifies that seniority comes into play only when the abilities of the two employees are relatively equal, the District Court correctly concluded that a reasonable jury could not decide that U.S. Steel violated the BLA by awarding the bid to Mulé over Harkins. In light of that conclusion, the District Court was also right in saying that there was no need to address whether USW breached its duty of fair representation to Harkins. The failure on the first part of Harkins’s hybrid claim is fatal to the entirety of it.
III. Conclusion
We will therefore affirm the judgment of the District Court.

. According to U.S. Steel’s Corporate Disclosure Statement, the case caption had incorrectly identified it as USX Corporation. We have corrected the caption accordingly.

. The District Court had jurisdiction pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 and 28 U.S.C. § 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.