**Kenneth L. RYAN, Plaintiff–Appellant,**

**v.**

**GENERAL MOTORS CORPORATION, United Auto Workers and United Auto Workers Local 735, Defendants–Appellees.**

Nos. 88–2157, 88–2198.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 2, 1989.

Decided Nov. 7, 1989.

---

**3.** *Id.* at —— [34 Tex.Sup.Ct. J. at 460].

**4.** *Id.* at —— [34 Tex.Sup.Ct. J. at 459].

show that the actions of either the International Union or Local 735 constituted a breach of their duty of fair representation. The court also held that Ryan failed to sustain his breach of contract claim against General Motors Corporation ("General Motors") under § 301 of the Taft–Hartley Act. The court concluded that even assuming the exhaustion of administrative remedies was futile, Ryan failed to file suit within six months of the breach of the duty of fair representation. *See DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). For the reasons stated below, we AFFIRM.

Ellis Boal (argued), Detroit, Mich., for Kenneth L. Ryan.

M. Beth Sax, General Motors Corp., Office of General Counsel, Detroit, Mich., for General Motors Corp.

William Mazey, Rothe, Mazey, Mazey & Hamburger, Southfield, Mich., Jordan Rossen, Connye Y. Harper (argued), Associate General Counsel, Intern. Union, UAW, Detroit, Mich., for United Auto., Aerospace and Agr. Implement Workers of America and United Auto Workers Local 735.

Before KEITH, JONES and GUY, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff Kenneth Ryan ("Ryan") appeals from the judgment of the district court granting defendants' motions for summary judgment. The court held that Ryan failed to: (1) exhaust his administrative remedies; (2) demonstrate that during his union appeals, either the United Auto Workers International Union ("International Union") or the United Auto Workers Local 735 ("Local 735") acted in bad faith; and (3)

## I.

On April 15, 1968, Ryan was hired by General Motors as a production worker at its Detroit Diesel Allison facility ("Detroit Diesel"), and immediately joined United Auto Workers Local 163 ("Local 163"). In 1969, he became a union committeeman and served in that position until 1975, when he was elected zone committeeman.[1] Ryan served as zone committeeman until August 23, 1976, when he was discharged for allegedly assaulting a foreman. After his discharge from Detroit Diesel, Ryan filed for unemployment benefits from the Michigan Employment Security Commission ("MESC"). He began receiving benefits in December, 1976.[2]

Local 163 filed a grievance protesting the discharge. Thereafter, the matter was settled and Ryan was awarded $25,000 in back pay and reinstated at General Motors' Hydramatic facility in Willow Run, Michigan. Ryan returned to work on July 18, 1977, and was reinstated as a senior employee. He immediately joined Local 735.

---

1. Ryan was actively involved in union activities and knowledgeable in the area of union grievance procedures. He was a member of the Union Action Committee and had enrolled in labor law courses at Wayne State University. He also took classes in grievance procedure at Local 163 and on several occasions went to the UAW Black Lake Education Center for training. In 1975, after he was elected zone committeeman, he became a full-time union official on the shop floor and sat on the shop committee, handling grievances at all levels and negotiating local contracts. From his experience, Ryan became an expert on local and national agreements.

2. Under the MESC procedure, Ryan was required to report to the MESC branch office every two weeks. On each visit, he was required to sign a paper indicating whether he had worked.

On August 4, 1977, Ryan was disciplined and eventually fired from Hydramatic for leaving his department without permission. Local 735 immediately filed a grievance. The next day, Ryan reported to the MESC and indicated that he had been fired from his new job. He was disqualified from receiving a check.

Local 735 was successful in negotiating Ryan's return. At a meeting discussing his return to work, Ryan was informed by an International Union representative that General Motors claimed he had received several weeks of unemployment benefits during a period when he was actively working at the Hydramatic plant. Although General Motors was inclined to fire Ryan because of this fraud, they offered him a deal: if he voluntarily resigned, he would get his seniority adjusted upward so that his pension would vest and he would receive some extra money. The representative urged Ryan to accept the offer, but he refused.

On April 3, 1978, Ryan returned to work at Hydramatic and was terminated on the same day. He reported to the Labor Relations office, met with two General Motors representatives, received his checks, and had the grievance settlement on the second discharge explained to him. Ryan was informed that because he had fraudulently obtained unemployment benefits while actively working at General Motors, a disciplinary interview was necessary. Ryan requested a committeeman and Committeeman William Dean Perry ("Perry") represented him. Ryan was given his discharge notice; thereafter, he and Perry prepared four grievances.

Ryan prepared and immediately filed four grievances on his own behalf asserting: (1) termination without just cause, No. 899530; (2) discrimination due to union activities, No. 899526; (3) delay in adjusting grievances, No. 899528, and; (4) denial of union representation at the time of termination, No. 899529. Each grievance demanded that he be returned to work and made whole.

Ryan admitted that he received the unemployment payments that were the basis of his termination. On September 9, 1977, Ryan signed a statement conceding that while employed at General Motors, he had received unemployment benefits from July 17, 1977 through August 4, 1977.[3] In signed documents Ryan submitted to the MESC four to six months prior to his termination from General Motors, he stated: "I did not report to the commission that I started working and was terminated because I needed the money to take care of my family. I did not intentionally withhold this information, I needed the money." General Motors had received these documents from the MESC, and relied upon them in deciding to terminate Ryan. These documents were available to Ryan and Perry during the disciplinary meeting prior to Ryan's termination. Given the above facts, Local 735 withdrew all of the grievances.

Ryan appealed the decision of the Local 735 to the International Union's Regional Office [4], only to be informed that his protest should have been addressed to the local membership. After a second appearance before the local membership, it rejected his request for reinstatement of the grievances. Ryan was then informed that he had thirty days to appeal to the International Union.

Ryan filed a timely appeal with the International Union, which the International Executive Board ("IEB") heard on December 18, 1979. The IEB held that only Ryan's

---

3. The MESC payment ledger establishes that from July 19, 1977 through August 6, 1977, Ryan received $408 in unemployment benefits.

4. Article 33 of the UAW Constitution provides members with the right to challenge the action of the Local union or its officials in a grievance process. If the membership rejects this challenge, or fails to act, the member has the right to appeal to the International Executive Board ("IEB"). An appeal to the IEB usually results in a hearing where the member has the right to be represented by counsel and to produce evidence. If the member is dissatisfied with the IEB decision, it may be appealed to the Convention Appeals Committee ("CAC") or to the Public Review Board ("PRB"). Ryan was well aware of these procedures not only because he had his own copy of the UAW Constitution, but also because he was actively involved in the union.

fourth grievance, pertaining to his denial of representation, potentially had merit.[5] Therefore, this grievance was reinstated.

On April 22, 1981, Local 735 withdrew the fourth grievance, and on June 15, 1981 written notice of settlement was sent to Ryan.[6] For approximately 18 months, Ryan failed to respond to the settlement of his grievance.[7] Despite Ryan's disregard of the Constitution's 30–day appeal limitations, he, nevertheless, was permitted to appeal Local 735's second withdrawal of his grievance.[8] On March 23, 1983, Local 735 notified Ryan that the membership sustained the withdrawal of grievance and informed him of the appropriate procedures if he desired further appeal. Ryan then appealed to the IEB[9] which sustained Local 735's decision to withdraw the grievance.

On January 3, 1984, Ryan appealed the IEB decision to the Convention Appeals Committee ("CAC"). A hearing was held on June 28, 1984, wherein the CAC *reversed* the IEB and reinstated the grievance. In accordance with the decision, on July 12, 1984, the grievance was reinstated to the second step of the grievance procedure. On September 17, 1985, Local 735 appealed the decision to the International Umpire level. Local 735 then had no further input into the disposition of the grievance.

International Union representative George Mapes ("Mapes") was assigned to process the grievance at the Umpire level. After conducting a factual investigation, he found no violation of the collective bargaining agreement. On February 16, 1987, Mapes withdrew the grievance. Ryan then initiated another appeal to the wrong union tribunal.[10] After appealing to the correct tribunal, a hearing was held before the IEB on July 7, 1987—this third IEB decision sustained Mapes' decision.

On February 17, 1988, Ryan mailed an appeal to the CAC. The CAC denied this appeal because Ryan's last appeal had been untimely. At his deposition, Ryan testified that he did not file a timely appeal because he relied upon advice given to him by International Union representative Frank James ("James") immediately after the July 7, 1987 IEB hearing. James allegedly informed Ryan that instead of appealing again, he should file a lawsuit. James believed that Ryan had exhausted his union remedies. It was Ryan's understanding that he should file suit within six months. Rather than appeal to the CAC or the Public Review Board ("PRB"), on March 8, 1988, Ryan filed this action seeking reinstatement to employment—more than eight months after the IEB's decision and his reliance upon James' alleged advice.[11]

In August, 1988 General Motors, International Union and Local 735 filed their motions for summary judgment.[12] On October 24, 1988, in an opinion from the bench, the district court granted defendants' motions for summary judgment.

5. Ryan did not appeal the IEB's disposition of the other grievances; therefore this lawsuit pertains solely to his fourth grievance.

6. In addition, Ryan was personally informed of this settlement by an International Union representative who told him that the grievance had been withdrawn.

7. On January 17, 1983, the union received a letter from Ryan alleging ignorance as to the disposition of his grievance.

8. Ryan erred again by appealing to the International Union; it notified him that under the Constitution, protests of a local union settlement must be taken to the Local union membership.

9. The IEB received Ryan's timely appeal on April 11, 1983; a hearing was held on September 9, 1983 and a copy of its decision forwarded to plaintiff on December 1, 1983.

10. On March 18, 1987, Ryan appealed directly to the CAC instead of the IEB. On March 30, 1987, the union notified him that his appeal to the CAC was premature and that he must first appeal to the IEB. Accordingly, on April 7, 1987, Ryan then appealed the Mapes' decision to the IEB.

11. This action was originally filed in the Wayne County Circuit Court. On April 5, 1988, defendants jointly removed this action to the district court for the Eastern District of Michigan on federal preemption grounds.

12. On August 22, 1988, a stipulated order was entered striking Ryan's claim for punitive damages against International Union and Local 735.

Ryan filed a timely notice of appeal on November 14, 1988.

## II.

■ In a hybrid section 301/breach of fair representation action, the burden of proof lies with the plaintiff. In *DelCostello v. Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983), the Supreme Court held that " '[t]o prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.' " *Id.* at 165, 103 S.Ct. at 2290 (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976)). In the grievance context, breach of the duty of fair representation occurs where: the union's conduct is arbitrary, discriminatory or in bad faith; the union processes the grievance in a careless manner; or the union inadequately handles the grievance because it is ignorant of contract provisions having a direct bearing on the case. *Vaca v. Sipes*, 386 U.S. 171, 207, 87 S.Ct. 903, 925, 17 L.Ed.2d 842 (1967); *Milstead v. Teamsters*, 580 F.2d 232, 235 (6th Cir.1978).

■ Under Rule 56 of the Federal Rules of Civil Procedure (West 1989), the burden of proof is on the plaintiff to produce evidence showing the existence of a genuine issue of material fact—the plaintiff cannot rely on conclusory allegations. *See Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Stephens v. Norfolk & W. R.R.*, 792 F.2d 576, 579 (6th Cir.1986). In the present case, the district court correctly entered summary judgment for the defendants as Ryan raised no genuine issue of material fact.

On appeal, Ryan argues that Local 735 breached its duty of fair representation by allegedly not investigating the merits of his four grievances. Ryan, however, failed to evidence his argument. In fact, the document he relies on, the purported signed statement of Local 735 zone committeeman Lloyd Fuqua ("Fuqua"), indicates not only that Fuqua received documents from Ryan, but also that he had the MESC documents in which Ryan admitted to fraudulently recovering unemployment benefits. This document persuasively shows that Fuqua *did* gather information and investigated the merits of Ryan's grievances.

Ryan also argues that in 1981, Local 735 failed to investigate his representation grievance when it was reinstated by the IEB. Here again, Ryan did not submit any evidence to substantiate his claim. Ryan merely assumes that Local 735 did not investigate the grievance because it was withdrawn. The fact that Local 735 withdrew a grievance which had been reinstated by the IEB is no indication of any wrongdoing—it does not mandate a favorable result for Ryan.

■ Ryan also alleges that Local 735 acted in bad faith in handling his representation grievance. Each action taken by Local 735, however, was aimed at assisting Ryan in his efforts. Ryan also argues that Local 735 delayed notifying him about its subsequent withdrawal of the representation grievance on April 22, 1981. The UAW records establish that timely notice was given; yet Ryan states he did not receive notice until January, 1983. Even assuming a delay occurred, that fact alone does not constitute a material breach in Local 735's duty of fair representation. The grievance was processed, and Ryan was not prejudiced; thereafter, he pursued a successful appeal to the CAC. Ryan presented no evidence on which a finding of hostility, discrimination or bad faith could be established on behalf of Local 735. Thus, the district court correctly found no breach of the duty of fair representation by Local 735.

■ Ryan also has not met his burden of proof regarding the allegation that the International Union breached its duty of fair representation. Here again, he fails to present any evidence showing that Mapes acted in bad faith in deciding to withdraw his grievance.

The undisputed facts show that after Ryan's successful appeal to the CAC, the denial of representation grievance was

reinstituted into the grievance procedure at the umpire stage. Mapes conducted a thorough investigation of the facts and concluded that the grievance would not be successful in arbitration. Therefore, in good faith, he withdrew it from the grievance procedure. Certainly, this action was within the scope of Mapes' authority on behalf of the International Union; it was not a breach of the duty of fair representation as a matter of law. *Vaca*, 386 U.S. at 194–95, 87 S.Ct. at 919; *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983); *Ruzicka v. General Motors Corp.*, 649 F.2d 1207 (6th Cir.1981); *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1103 (6th Cir.1981); *Dill v. Greyhound Corp.*, 435 F.2d 231, 238 (6th Cir. 1970).

No evidence was presented upon which a finding of hostility, bad faith or discrimination by Mapes toward Ryan could be made. The mere fact that the grievance was withdrawn does not by itself establish personal hostility or discrimination. Accordingly, the district court correctly found that there was no breach of the duty of fair representation by the International Union.

### III.

█ Ryan also argues that the district court erred in finding that he failed to exhaust his administrative remedies. He contends that in 1987, it was futile for him to continue to appeal the withdrawal of his representation grievance because: (1) James, his International Union representative, informed him to file suit; and (2) several years had elapsed since his initial appeal.

The Supreme Court in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), stated that exhaustion of grievance procedures is mandatory, unless resort to union appeal procedures is demonstrated to be futile. *See id.* at 37, 108 S.Ct. at 370; *Clayton v. International Union, UAW*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Monroe v. International Union, UAW*, 723 F.2d 22, 24–25 (6th Cir.1983). In *Monroe*, we discussed the factors for determining whether exhaustion would be futile:

> Factors specified as 'relevant' in deciding whether exhaustion should be required are hostility on the part of union officials, whether such appeals procedures would be adequate either to 'reactivate' the grievance or to award the 'full relief' sought, and the delay that would occur if the procedures were followed.

*Monroe*, 723 F.2d at 24–25 (citing *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095). Moreover, we stressed that in weighing these factors, "the balance falls in favor of requiring exhaustion" particularly where the union member "is fully advised of appeal procedures and the union constitution mandates that they be exhausted and where those procedures give full relief as defined in *Clayton....*" *Id.* at 25–26.

It is well-settled that the opinion of a union representative cannot be construed as a waiver of the UAW's constitutional appeal requirements. *Id.* at 24–25; *Miller v. General Motors Corp.*, 675 F.2d 146, 149–50 (7th Cir.1982); *Baldini v. International Union, UAW*, 581 F.2d 145, 148 (7th Cir.1978). Furthermore, in this instance, Ryan was not a novice on the particularities of the unions' grievance procedures; he was knowledgeable and well-acquainted with his rights as a union member.

The fact that several years had passed since Ryan filed his initial appeal does not create a genuine material issue of fact. Within the span of the nine years at issue, there were three separate appeals, each necessitating investigations and hearings. On two occasions, Ryan's grievance was reinstated and processed through the grievance procedure; in other instances Ryan failed to timely pursue the matter. Delay is virtually unavoidable where a grievance is endlessly appealed. From the facts presented, it is evident that the UAW put forth its best efforts to secure a satisfactory result for Ryan. Therefore, the district court correctly concluded that the UAW was not at fault, but that Ryan failed to exhaust his administrative remedies.

## IV.

Plaintiff does not contest the fact that this hybrid 301/breach of fair representation action is subject to a six month statute of limitations. *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294; *Badon v. General Motors Corp.*, 679 F.2d 93, 99 (6th Cir.1982). Ryan had six months within which to file suit from the date on which he knew or should have known of the union's alleged breach of its duty of fair representation. *See, e.g., Chrysler Workers Assoc. v. Chrysler Corp.*, 834 F.2d 573, 581 (6th Cir.1987); *Dowty v. Pioneer Rural Electric*, 770 F.2d 52, 56 (6th Cir.1985). From the evidence presented, Ryan believed it was futile to proceed as of July 7, 1987 when James allegedly informed him to file suit. According to Ryan, James told him he had six months within which to sue. As Ryan did not file suit until March 3, 1988—eight months later, we find his arguments to be unpersuasive.

Furthermore, Ryan argues that the passage of time established the futility of exhausting administrative remedies. If Ryan truly believed that the lapse of time established the futility of exhausting his union remedies, then he should have filed suit once he had made that determination. Certainly, in light of *DelCostello*, Ryan failed to file a timely suit. Therefore, the district court 'did not err in finding that Ryan's suit is barred by the statute of limitations.

Accordingly, for the foregoing reasons, we AFFIRM.