48 F.3d 1219
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Nella RAY, As Personal Representative of the Estate of
Timothy Ray; Nella Davis Ray, Individually; Sergio Ray,
Individually by and through his Next Friend Nella Ray;
Helen Ray, Plaintiffs-Appellants,
Timothy Ray, Nella Ray As Personal Representative of the
Estate of, Plaintiff,
v.
GENERAL MOTORS CORPORATION; International Union, United
Automobile, Aerospace & Agricultural Implement Workers of
America; International Union, United Automobile, Aerospace
and Agricultural Implement Workers of America, Local 652,
Defendants-Appellees.
 No. 93-2421.
 United States Court of Appeals, Sixth Circuit.
 March 1, 1995.
 
 Before: LIVELY, JONES, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs Nella Ray, Sergio Ray, and Helen Ray filed a three-count complaint against employer General Motors Corporation ("GM") and the United Automobile Workers' Union ("UAW"). Count I alleged that GM terminated Timothy Ray's employment because of his race in violation of Michigan's Elliott-Larsen Civil Rights Act, Mich.Comp.Laws Ann. Sec. 37.2202(1)(a) (West Supp.1994). Count II alleged that GM breached its collective bargaining agreement with UAW by terminating Ray's employment when he had not violated a shop rule. Count III alleged that UAW breached its duty to fairly represent Ray when it failed to diligently process the grievance that challenged Ray's termination. The Plaintiffs brought Counts II and III pursuant to section 301(a) of the Labor-Management Relations Act, 29 U.S.C. Sec. 185(a) (1988). The district court awarded summary judgment on all claims to both Defendants, and we affirm the district court's judgment.
 
 I.
 
 2
 On January 3, 1990, GM disciplined Timothy Ray for using abusive language toward his supervisor, Robert Hyvarinen. Ray, a black welder and a member of UAW, worked at GM's Oldsmobile plant in Lansing, Michigan. Several months later, in August 1990, Ray encountered Hyvarinen in a grocery store and accused him of lying about the January incident. Hyvarinen alleged that, following the accusation, Ray struck him several times and knocked off his glasses. Although Ray admitted confronting Hyvarinen, Ray denied hitting him. Rather, Ray alleged that Hyvarinen called him "a nigger." As a result of the grocery store incident, GM placed Ray on indefinite suspension on August 10, 1990. After GM further considered the incident and Ray's prior disciplinary record,[1] GM fired Ray on September 5, 1990.
 
 
 3
 On August 10, the day that GM placed Ray on indefinite suspension, UAW filed a grievance on Ray's behalf. Local and International UAW representatives unsuccessfully pressed for Ray's reinstatement. After GM refused to reinstate Ray, international representative George Mapes scheduled a meeting with Ray to prepare for arbitration. Ray committed suicide, however, on December 28, 1991, before the meeting occurred. After Ray's death, it was Mapes' opinion that the arbitration could not go forward because Ray could not testify. Therefore, the grievance was withdrawn.
 
 
 4
 The Plaintiffs filed their three-count complaint in state court, but GM and UAW removed the action to federal district court. On October 1, 1993, the district court granted GM's and UAW's motions for summary judgment on all counts, and this appeal followed.
 
 II. Racial Discrimination
 
 5
 This court "review[s] a district court's grant of summary judgment de novo.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Russo v. City of Cincinnati, 953 F.2d 1036, 1041-42 (6th Cir.1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).
 
 
 6
 Michigan's Elliott-Larsen Civil Rights Act provides in pertinent part that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... race." Mich.Comp.Laws Ann. Sec. 37.2202(1)(a) (West Supp.1994). Under the Act, a plaintiff may pursue a prima facie case of discrimination either by advancing a theory of the employer's intentional discrimination or by advancing a theory of disparate treatment. Brewster v. Martin Marietta Aluminum Sales, Inc., 378 N.W.2d 558, 562-63 (Mich.Ct.App.1985); Schipani v. Ford Motor Co., 302 N.W.2d 307, 312 (Mich.Ct.App.1981). Here, the Plaintiffs have proceeded under both theories.
 
 A. Disparate Treatment
 
 7
 The district court granted summary judgment to GM on the Plaintiffs' disparate treatment theory of racial discrimination because the Plaintiffs failed to establish a prima facie case of discrimination.
 
 
 8
 To establish a prima facie case of disparate treatment, the Rays must show that Timothy Ray was a member of a protected class and that for similar conduct, GM treated Ray differently than those who were not members of the protected class. Betty v. Brooks & Perkins, 521 N.W.2d 518, 523 (Mich.1994); Brewster, 378 N.W.2d at 562.
 
 
 9
 No one disputes Ray's protected status. Regarding evidence of disparate treatment in the area of discipline, the Plaintiffs allege that GM was slow to terminate a white employee who shot and wounded a black employee in a racially motivated attack at GM in 1982. We agree with the district court that this evidence does not raise a material issue of fact concerning the disparate treatment of Ray because both offending employees were afforded the same treatment, termination. Thus, the Plaintiffs did not meet their prima facie case of disparate treatment, and summary judgment on this issue was appropriate.[2]
 
 B. Intentional Discrimination
 
 10
 Although unclear in their brief, the Plaintiffs contend that GM intentionally discriminated against Timothy Ray, when it terminated his employment. Intentional discrimination claims under Michigan's Elliott-Larsen Civil Rights Act are analyzed using the burden-shifting paradigm of federal Title VII claims. Rabidue v. Osceola Ref. Co., 805 F.2d 611, 617 (6th Cir.1986), cert. denied, 481 U.S. 1041 (1987); Jenkins v. Southeastern Michigan Chapter, American Red Cross, 369 N.W.2d 223, 227-28 (Mich.Ct.App.1985). Assuming arguendo that the Plaintiffs met their prima facie case of intentional discrimination, we find that summary judgment was appropriate on this issue because the Plaintiffs failed to raise a genuine issue of fact that would show that GM's proffered nondiscriminatory reason for Ray's discharge was pretextual.
 
 III. UAW's Duty of Fair Representation
 
 11
 Next, the Plaintiffs contend that UAW breached its duty to fairly represent Timothy Ray because his grievance was not timely processed and because the grievance was withdrawn upon Ray's suicide.[3] Both the Plaintiffs and UAW agree that "[i]n the grievance context, breach of the duty of fair representation occurs where: the union's conduct is arbitrary, discriminatory or in bad faith." Ryan v. General Motors Corp., 929 F.2d 1105, 1109 (6th Cir.1989) (citing Vaca v. Sipes, 386 U.S. 171, 207 (1967)). After reviewing the evidence submitted by the parties, we are convinced that the district court appropriately awarded summary judgment to UAW on this claim because the Plaintiffs presented no evidence that Ray's grievance was processed more slowly than other grievances. Moreover, even if union officials mistakenly evaluate the probability of success on the merits of a grievance, the union's withdrawal of a grievance does not establish a breach of the duty of fair representation. Poole v. Budd Co., 706 F.2d 181, 184 (6th Cir.1983).
 
 
 12
 IV. GM's Breach of the Collective Bargaining Agreement
 
 
 13
 The Plaintiffs claim that GM's termination of Ray's employment breached GM's collective bargaining agreement with UAW because GM had no basis in the agreement for firing him.
 
 
 14
 Because a Sec. 301 claim is a hybrid cause of action, both the Supreme Court and the Sixth Circuit have consistently held that a successful plaintiff must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement to recover against either the company or the union. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990); White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559-60 (6th Cir.1990); Bagsby v. Lewis Bros., Inc., 820 F.2d 799, 801 (6th Cir.1987). Because the Rays did not state a valid claim against UAW for breach of its duty of fair representation, the district court also appropriately granted summary judgment to GM on the Plaintiffs' claim for breach of the collective bargaining agreement.
 
 V.
 
 15
 Based on the foregoing, we AFFIRM the district court's grant of summary judgment to GM and UAW on all three counts of the Plaintiffs' complaint.
 
 
 
 [1]
 According to GM, Ray's pertinent disciplinary record included the following: September 17, 1989--one week suspension for fighting on company property; January 3, 1990--two week suspension for using abusive language toward a supervisor
 
 
 [2]
 The Plaintiffs also argue that because General Motors offered a nondiscriminatory excuse for terminating Timothy Ray, namely the physical assault on the fellow employee and his prior disciplinary record, the issue of whether a prima facie case was established by the Plaintiffs becomes irrelevant. United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711 (1983). The Plaintiffs, however, have misread Aikens, and their argument that they now have no burden to advance a prima facie case is without merit
 
 
 [3]
 For purposes of parts III and IV of this opinion, we are assuming, without so holding, that the Plaintiffs have standing to bring the respective claims. We do not reach the issue of standing because it is not necessary to our disposition of the case