John L. **LEVERETTE**, Plaintiff,

v.

**FORD MOTOR COMPANY,** Defendant.

**Civil Action No. 96–40197.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 29, 1996.

Shannon V. Loverich, Ford Motor Company, Dearborn, MI, for Defendant.

Elaine R. Carlis, Detroit, MI, for Plaintiff.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

GADOLA, District Judge.

On April 23, 1996, plaintiff, John L. Leverette ("Leverette"), filed the instant action in Wayne County Circuit Court. On May 22, 1996, defendant, Ford Motor Company ("Ford"), filed a notice of removal with this court, and the case was so removed. Presently before this court is Ford's motion for summary judgment[1] and Leverette's motion for leave to file a response to defendant's motion for summary judgment. Pursuant to Local Rule 7.1(e)(2), this court has dispensed with oral argument and will decide the present motion based on the written submissions of the parties. For the following reasons, Leverette's motion for leave to file a response will be denied and Ford's motion for summary judgment will be granted.

## I. SUMMARY OF CASE

Leverette, a member of the United Automobile Aerospace and Agricultural Implement Workers of America ("UAW") Local Union 174, was formerly an hourly employee at Ford's Vulcan Forge Plant. Leverette was discharged four times over the course of his employment with Ford: (1) on August 20, 1977, Leverette was dismissed for assaulting another employee; (2) on May 2, 1991, Leverette was terminated for fighting on company property; (3) on November 5, 1991, Leverette again was released for fighting on company property; and, (4) on June 12, 1996, Leverette was fired for his involvement in an altercation with a fellow employee.

After the first three discharges, Leverette obtained reinstatement of his employment pursuant to settlement agreements obtained through the grievance procedure set forth in

---

1. Ford originally filed its motion for summary judgment on June 11, 1996. On June 14, 1996, this court entered an order striking Ford's motion since the motion did not comply with the local court rule that requires every motion to be accompanied by a brief. On June 18, Ford re-filed its motion for summary judgment in accordance with local court rules, and petitioned this court to reconsider its motion for summary judgment. On July 12, 1996, this court granted Ford's motion for reconsideration.

the Ford–UAW Collective Bargaining Agreement ("CBA"). In the third and final settlement agreement, entered into on November 19, 1991, Leverette signed a "Reinstatement Waiver," providing:

> In consideration of my reinstatement, without loss of seniority, as an employee of the Ford Motor Company, I hereby agree as follows:
>
> (a) I waive and release all rights, including back pay, which I may have for the period beginning with my discharge and ending with my reinstatement.
>
> (b) The time I have lost shall be counted as days of absence from my regularly scheduled work for any payment or benefit to which I am otherwise entitled.
>
> (c) This reinstatement does not in any way condone the action that resulted in my discharge and it is not intended that this reinstatement will retroactively convert my discharge to a disciplinary layoff.
>
> (d) *I shall be regarded, for disciplinary purposes, as being on probation for a period of twelve (12) months and understand that I will not have access to the grievance procedure to protest the reasonableness of any penalty, including discharge, I may receive during this period for an infraction of Company rules or misconduct.*
>
> (e) I will continue to be considered on Disciplinary layoff during the period November 19, 1991 thru [sic] January 2,

1992. I further understand that I will not be entitled to any holiday pay during this period of time.

(emphasis added). Thus, after his third discharge, as an explicit condition of his reinstatement with Ford, Leverette was placed on a one-year probationary period.

On June 12, 1992, Leverette was involved in an altercation with a co-worker. An investigation revealed that Leverette had utilized profane and abusive language, and brandished a knife from his pocket during the quarrel. Thus, on June 16, 1996, Ford terminated Leverette for the fourth and final time. Leverette maintains that he was falsely accused of such actions and thus, wrongfully discharged in contravention of his employment contract.[2]

On June 16, 1992, Local Union 174 filed a grievance in protest of Leverette's termination. However, the International Union later withdrew the grievance, thereby honoring the explicit terms of the third settlement agreement.[3] The Local Union provided Leverette notice of the International Union's decision to withdraw the grievance on September 2, 1992.[4]

On April 23, 1996, Leverette filed the instant breach of contract action in state court. Ford argued that the "contract" upon which Leverette brought his cause of action was the CBA negotiated between Ford and the UAW,[5] and thus Ford construed Leverette's

---

2. In his complaint, Leverette asserts that there are witnesses to the altercation who will exonerate Leverette of any misconduct or wrongdoing.

3. *See supra* p. 582.

4. On October 30, 1992, Leverette filed a charge with the National Labor Relations Board ("NLRB") claiming that the decision to withdraw his grievance was "arbitrary, capricious, and discriminatory." The NLRB refused to issue a complaint in this regard, finding that the International Union's decision to drop the grievance was not "so unreasonable under the circumstances." On March 2, 1994, Leverette filed an appeal with the International Union, concerning its decision to withdraw his grievance. The appeal was dismissed a untimely under International Union Constitution.

5. Ford contended that the paragraphs 6, 7, 10, 11, 13, and 17 in Leverette's complaint relate to

the CBA. Paragraph six asserts that "plaintiff's employment with Ford Motor Company was pursuant to a *valid contract.*" Paragraph seven alleges that "Defendant ... conspired to falsely accuse Plaintiff of misconduct to sustain its *breach of contractual relationship.*" Paragraph ten provides, "At all times relevant herein Defendant was aware that Plaintiff would suffer wrongful termination, substantial hardship and income resulting from the loss of his job by its *breach of the employment contract.*" Paragraph eleven reads in relevant part, "Despite Plaintiff's requests for consideration concerning his job and his repeated denials that he had in any way done any thing or taken any action in violation of company policies or the *employment contract* to warrant such drastic action, Defendant terminated Plaintiff's employment." Paragraph thirteen argues that the "actions of the Defendant were willful and wanton and in total disregard of Plaintiff's *contractual rights.*" Paragraph seventeen provides, "Plaintiff has been subjected to

breach of contract claim as a federal claim for breach of labor contract claim under Section 301 of the Labor Management Relations Act ("LMRA").[6] By so construing Leverette's claim, Ford removed the case to this court pursuant to 28 U.S.C. § 1331.

On June 18, 1996, Ford filed a motion for summary judgment arguing that Leverette has failed to state a claim upon which relief can be granted, and that Leverette's LMRA § 301 claim is barred by the statute of limitations. Leverette responded to Ford's motion on October 23, 1996, by filing a motion for leave to file a response to Ford's motion for summary judgment.[7]

## II. ANALYSIS

### A. Leverette's Motion for Leave to File a Response Must Be Denied

■ This court denies Leverette's motion for leave to file a response to Ford's motion for summary judgment. Local Rule 7.1(c) provides that "[a] respondent opposing a motion shall file a response, including a brief and such supporting documents as are then available, within 10 days after service of th[e] motion." Leverette did not file the

motion for leave to file a response until October 23, 1996, in excess of *four months* after Ford filed its motion for summary judgment.[8] This court will not condone such dilatory behavior. Indeed, to do so would be to ignore the mandate of Federal Rule of Civil Procedure 1—"to secure the just, speedy, and inexpensive determination of every action." Accordingly, Leverette's motion for leave to file a response must be denied.[9] That said, regardless of Leverette's filing of an untimely response, Ford's motion for summary judgment must be granted because Leverette's claim fails on the merits.

### B. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of

wrongful termination in *breach of his contractual rights....*"

6. Section 301 of the LMRA provides that "[s]uits for violations of contracts between the employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties...." "Section 301(a) of the LMRA provides a federal remedy for breach of a collective-bargaining agreement." *Groves v. Ring Screw Works,* 498 U.S. 168, 172, 111 S.Ct. 498, 501, 112 L.Ed.2d 508 (1990).

7. Leverette presumably filed a response brief in opposition to Ford's motion for summary judgment because Ford filed a reply brief to the same on October 24, 1996. To date, this court has not received Leverette's response brief.

8. Leverette's counsel points out that she was a Visiting Professor at the School of Business in Tuskegee University Small Business Development Center from June through September, 1996. Due to Leverette's attorney's teaching position, counsel for Leverette and Ford agreed in a phone conversation in June, 1996, to allow Leverette's attorney an extension to file a response. Counsel also agreed to postpone a hearing on Ford's motion for summary judgment until Lev-

erette's counsel returned from her teaching obligation. Such agreement by the parties is insufficient to warrant an extension, The parties should have obtained a court order granting such an extension. Moreover, in support of the motion for leave, Leverette's counsel argues that she is a solo practitioner who is "extremely pressed with meeting deadlines and responding to other outstanding obligatory matters." While this court is cognizant of the congested schedules and lofty demands placed upon attorneys, especially solo practitioners, this court is nonplussed by these arguments. Attorneys must "organize their work so as to be able to meet the time requirements of the matters they are handling or suffer the consequences." *McIntosh v. Antonino,* 71 F.3d 29, 38 n. 9 (1st Cir.1995).

9. Even assuming arguendo that Leverette's counsel was granted an extension by this court to file a response to Ford's motion for summary judgment, Leverette's response would still be inordinately late. Leverette's counsel returned from her teaching position in September and a hearing on this matter was set for October 16, 1993, yet Leverette's counsel did not file a motion for leave to respond to Ford's summary judgment motion until more than one month after her return from Tuskegee University and more than one week after the hearing date.

action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly

probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### C. Leverette's Complaint Alleges a Claim Under LMRA § 301

 As a preliminary matter, this court finds that Leverette's breach of contract claim is actually a LMRA § 301 claim for breach of a labor contract. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206, (1985) ("When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a section 301 claim, or dismissed as pre-empted by federal labor contract law.").[10] It is well-established that when a plaintiff's claim for wrongful discharge is based upon rights and relations created by a CBA, as is Leverette's claim in the instant case, the claim is cognizable under LMRA § 301 and its applicable case law. *Ray v. General Motors Corp.*, No. 92–70, slip op., 1993 WL 655184, at *4 (W.D.Mich. Sept. 30, 1993).[11] Indeed, federal policy dictates such a characterization of Leverette's claim, notwithstanding the fact that LMRA § 301 is not mentioned in Leverette's complaint and his breach of contract claim is stylized in common law terms. *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209 (9th Cir.1980) (cited in *Swift*, 637 F.Supp. at 125).[12]

---

10. "In fact, the term 'contract' as used in LMRA § 301, is not limited to collective bargaining agreements, but can embrace understandings other than those usually understood as collective bargaining agreements." *In re General Motors Corp.*, 3 F.3d 980, 983 (6th Cir.1993).

11. *See also Smith v. Evening News Assn.*, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962) (Section 301 covers suits by individuals "seeking to vindicate 'uniquely personal rights of employees such as wages, hours, overtime pay, and wrongful discharge.' ").

12. If this court were not to construe Leverette's claim as a LMRA § 301 claim, then his claim would be pre-empted. Federal labor law preempts any state claim of wrongful discharge where a CBA is involved. *Swift v. Ford Motor Company*, 637 F.Supp. 125, 125 (E.D.Mich. 1986). *See also Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988) (requiring preemption when application of state law to a dispute involves interpretation of a CBA); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206, (1985) (holding that a

### D. Leverette's LMRA § 301 Claim Must Be Dismissed

■ Actions brought under LMRA § 301 are hybrid in nature, in that a plaintiff must establish two violations. First, the plaintiff must show that the union breached its duty of fair representation *and* second, the plaintiff must demonstrate that the company breached the CBA. *DelCostello v. Int'l. Brotherhood of Teamsters et al.,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983) (The Supreme Court found that a LMRA § 301 claim is actually the consolidation of two separate but inextricably interdependent actions; the first action is against the employer for dismissing him in violation of the CBA and the second action is against the union for breach of the duty of fair representation.); *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) (holding that a plaintiff first must establish that the union breached its duty of fair representation before a court may consider evidence of an employer's alleged violation of a CBA).[13] As for the first element, a union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).[14]

■ In the instant case, Leverette's complaint is wholly devoid of any allegation that the union breached its duty of fair representation by withdrawing Leverette's grievance or otherwise. Accordingly, Leverette's LMRA § 301 claim must fail.[15] *See Swift,* 637 F.Supp. 125 (granting summary judgment in favor of Ford and dismissing plaintiff's complaint because plaintiff failed to allege a breach of the union's duty of fair representation).

■ Alternatively, Ford's motion for summary judgment must be granted because Leverette failed to file his complaint within the applicable statute of limitations. A six month statute of limitations applies to LMRA § 301 claims. *DelCostello v. Int'l. Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Sixth Circuit held that the statute begins to run when the plaintiff knew or should have known in the exercise of reasonable diligence of the acts that constitute the LMRA § 301 violation. *Adkins v. Int'l. Union of Electrical, Radio & Machine Workers,* 769 F.2d 330, 335 (6th Cir.1985). In this case, the statute

state law claim was pre-empted when "inextricably intertwined with consideration of the terms of [a] labor contract"); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, (1977) (noting interference with the federal law vision of a national labor policy if state law claims founded upon a CBA was not pre-empted); *Jones v. General Motors Corp.,* 939 F.2d 380, 383 (6th Cir.1991) (recognizing that the Sixth Circuit mandates preemption in all cases where claims implicate federal policies underlying federal labor law).

**13.** *Cf. Bagsby v. Lewis Brothers, Inc.,* 820 F.2d 799, 801 (6th Cir.1987) (holding that in order to succeed against the company, plaintiff must demonstrate two violations—that the company breached the CBA and the union breached its duty of fair representation).

**14.** *See also Ryan v. General Motors Corp.,* 929 F.2d 1105, 1108 (6th Cir.1989) ("In the grievance context, breach of duty of fair representation occurs where: the union's conduct is arbitrary, discriminatory or in bad faith; the union processes the grievance in a careless manner; or the union inadequately handles the grievance because it is ignorant of contract provisions having a direct bearing on the case.").

**15.** Assuming arguendo, that Leverette had included allegations of the UAW's breach of its duty of fair representation, this court nevertheless finds that Leverette's claim is wholly without merit. This court has reviewed all the documentary evidence submitted and has decided that plaintiffs have not identified a genuine issue of material fact that the UAW's withdrawal of Leverette's grievance was arbitrary, discriminatory or in bad faith as a matter of law. Ford submitted sufficient evidence establishing that the UAW did not breach its duty of fair representation, including: (1) four disciplinary action reports supporting every one of Leverette's discharges by Ford; (2) the Reinstatement Waiver signed by Leverette after the third discharge; (3) the initial grievance filed by the Local Union; (4) the letter dismissing, as untimely, Leverette's appeal of the International Union's withdrawal of his grievance; and (5) the NLRB's summary report stating that the International Union dropped his grievance because Leverette had waived his rights to all grievances in a settlement agreement after his third discharge. Leverette has not presented any evidence to the contrary. In fact, Leverette did not even file a response to Ford's motion for summary judgment.

began to run on September 2, 1992, when the Local Union informed Leverette of the withdrawal of his grievance. *Jones v. General Motors Corp.,* 939 F.2d 380, 384 (6th Cir. 1991) (holding that plaintiff's § 301 claim was time-barred since filed eleven months after learning, at a meeting with UAW officials, that he would not be reinstated according to a settlement agreement). Leverette filed this action on April 23, 1996, in excess of three years after the six-month statutory limitations period expired, and Leverette's claim must be dismissed as untimely.

### ORDER

Therefore, it is hereby **ORDERED** that Ford's motion for summary judgment is **GRANTED,** and Leverette's case is dismissed with prejudice.

**SO ORDERED.**