William **MOORE,** Plaintiff–Appellant,

v.

**UNITED AUTOMOBILE, AEROSPACE, AGRICULTURE IMPLEMENT WORKERS OF AMERICA INTERNATIONAL UNION LOCAL 598; General Motors Corporation,** Defendants–Appellees.

No. 00–2341.

United States Court of Appeals, Sixth Circuit.

March 28, 2002.

Before SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

PER CURIAM.

Plaintiff William Moore filed a hybrid § 301 breach of contract/fair representation suit against his former employer, General Motors Corporation ("GM"), and his union, United Automobile, Aerospace, Agricultural Implement Workers of America International Union Local 598 ("Local 598"). Moore appeals the district court's order granting summary judgment in favor of GM and Local 598. For the reasons that follow, we **AFFIRM** the district court's judgment.

## Background

Moore began his employment with GM in 1976 as an hourly assembly line worker. During his employment, he was a member of UAW Local 598. His employment with GM was terminated on September 18, 1999 when he failed to return to work at the end of an approved medical leave. GM deemed Moore a "voluntary quit" pursuant to paragraph 111(b) of the GM/UAW Collective Bargaining Agreement ("CBA"). Despite his medical clearance to return to work on September 14, 1992, it is undisputed that Moore failed to return to work within the time allotted by paragraph 111(b). Moore testified that the only reason he failed to return to work after the expiration of his medical leave was because he wanted a personal leave to help his mother move to Kentucky.

Moore admits that he never submitted any personal leave request to his foremen, the personnel department or any other GM employee. Rather, Moore contends that on September 16, 1992 he went to the Local 598 union hall and asked then union president, John Fedewa, for assistance in obtaining a personal leave. While he was in Fedewa's office, Moore claims that Fedewa called someone in the personnel department or labor relations and said, "I got a guy sitting here that needs a personal leave." Moore testified that after Fedewa got off the phone, he said, "Bill, I got you all set for a thirty-day personal leave." Fedewa admits that he met with Moore but he denies ever making a phone call requesting personal leave for Moore.

Moore testified that upon receiving a voluntary quit slip on September 25, 1992, he immediately went to the union hall and confronted Fedewa. When Moore showed Fedewa the voluntary quit slip, Moore claims that Fedewa told him that upon reviewing his work history, he decided to have the leave rescinded and to "screw

[Moore] out of a job." After his conversation with Fedewa, Moore testified that Charlie Phillips (the Local's financial secretary) wrote a grievance on his behalf contesting the cessation of his employment.

Moore's grievance was denied by GM at step one and step one and a half of the grievance process. The grievance then proceeded to the second step where it was handled by Mark Hawkins, the chairman of the Shop Committee. After reviewing Moore's poor work record, Hawkins told Moore that it would be very difficult to have him reinstated because he had failed to return to work within the time allotted without a satisfactory reason for his failure to do so. Hawkins advised Moore that the best chance the union had to get him reinstated was to hold his grievance and wait for a moment when management was weak, i.e., a strikeable situation, when they could attempt to have his grievance resolved as part of the collective bargaining negotiations.

Moore testified that he became dissatisfied with his union's representation in "late '95 or '96" when Hawkins allegedly told him that he could not bring him back to work. Despite his dissatisfaction, Moore never requested the membership of Local 598 or the International Union to review the handling of his grievance. Moreover, Moore failed to take action even after he was told by GM in October 1996 that his grievance had been withdrawn by Hawkins.

In October 1999, Moore instituted this hybrid § 301 action alleging a claim of breach of the collective bargaining agreement against GM and a claim of breach of duty of fair representation against Local 598. The district court granted summary judgment in favor of GM and Local 598. It held that Moore's hybrid § 301 claim was barred by the applicable six-months

statute of limitations. It went on to conclude that assuming, *arguendo*, that Moore's claim was not time-barred, the complaint was still barred by Moore's failure to exhaust his intra-union remedies before filing his lawsuit. Additionally, the court held that Moore's complaint failed on the merits because he could not show that GM breached the CBA.

## Standard of Review

We review summary judgment decisions *de novo*. *See Roeder v. American Postal Workers Union*, 180 F.3d 733, 737 (6th Cir.1999). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## Discussion

Moore does not contest the fact that this hybrid § 301 action is subject to a six-month statute of limitations. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1111 (6th Cir. 1989). "A claim under § 301 accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir.1994) (internal quotation marks and citations omitted). Further, a hybrid § 301 action accrues against the company when it accrues against the union. *See Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir.1990).

At the latest date, Moore should have known in October 1996 of his potential cause of action when John Mahoney of

GM's labor relations department told him that his union had withdrawn his grievance. There were other instances prior to 1996 that should have also placed Moore on notice that a legal claim had accrued, most particularly the statements by Hawkins that he would not be able to get Moore his job back. Construing the facts in Moore's favor, we conclude that Moore's claim under § 301 accrued no later than October 1996, so his action filed three years later in 1999, well beyond the six-month statute of limitations period, is time-barred.

In order to avoid this statute of limitations bar, Moore argues that the court impermissibly made credibility determinations when it expressed incredulity that Moore did not realize early on that the union was lying to him and when it ignored Moore's testimony that he did not understand what it meant when he was informed that his grievance had been withdrawn in 1996. "The determination of the accrual date [in a § 301 action] is an objective one: the asserted knowledge of the [plaintiff] is not determinative if [he] did not act as a reasonable [person] and, in effect, closed [his] eyes to evident and objective facts concerning the accrual of [his] right to sue." *Noble*, 32 F.3d at 1000. The phrase "withdrew the grievance" certainly should have put a reasonable person on notice that he would have to take legal action to protect his rights. Thus, we find that the district court correctly employed this objective standard when it declined to give any weight to Moore's asserted knowledge in light of the evident and objective facts concerning the accrual of Moore's right to sue. There was no genuine issue of material fact concerning the accrual date of Moore's claim and summary judgment in favor of GM and Local 598 was properly granted.

Accordingly, for the reasons stated, we find Moore's claim time-barred. Because of that determination, there is no need to discuss the alternative grounds for denying relief.

**AFFIRMED.**