William **WASHINGTON,**
**Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY and the International Union, United Automobile, Aerospace, Agricultural Implement Workers of America, Defendants–Appellees.**

No. 01–1025.

United States Court of Appeals,
Sixth Circuit.

April 30, 2002.

Before MARTIN, Chief Circuit Judge; COLE, Circuit Judge; and SHARP, District Judge.*

* The Honorable G. Kendall Sharp, United States District Judge for the Middle District of Florida, sitting by designation.

PER CURIAM.

Plaintiff William Washington appeals the district court's grant of summary judgment in favor of defendants Ford Motor Company and the International Union, United Automobile, Aerospace, Agricultural Implement Workers of America—UAW (United Auto Workers). We AFFIRM.

## I.

In 1995, Ford hired Washington as an Assembler at its Wayne Assembly Plant.

On November 19, 1997, Washington had an argument with his Superintendent John Galvin, which resulted in a hearing before the Labor Relations Department. Following the hearing, Washington was suspended. According to Ford's security officer, while being escorted out of the plant, Washington said: "What do I have to do, bring a baseball bat up here to get somebody's attention?"

On November 24, 1997, Ford terminated Washington. Washington submitted a grievance to his United Auto Workers representative, Kell Quantz. Quantz investigated Washington's grievance by (1) reviewing Washington's disciplinary and attendance record, (2) interviewing Washington's fellow union members, and (3) reviewing written statements from various Ford employees. In conducting his investigation, Quantz also considered Ford's Zero Tolerance Policy regarding workplace violence, to which United Auto Workers had agreed.

Based on Quantz's investigation and recommendations, Washington's union bargaining committee concluded that United Auto Workers would not win if Washington's grievance was submitted to arbitra-

tion. Accordingly, on March 18, 1998, United Auto Workers informed Washington that his grievance had been withdrawn.

Washington appealed the decision to United Auto Worker's International Executive Board, which denied his appeal. Washington did not appeal the International Executive Board's decision to United Auto Workers's Appeals Committee or to its Public Review Board, both of which had authority to award money damages.

At some point before Washington's termination, a Caucasian Ford employee threatened his supervisor with a knife. That employee was terminated, but was later reinstated at United Auto Workers's request, after completing an employee counseling program.

Washington has acknowledged that Ford's security officer suggested that he enroll in an employee counseling program and that he did not enroll in such a program.

On July 29, 1999, Washington sued Ford and United Auto Workers in Michigan state court, claiming that United Auto Workers had breached its duty of fair representation and that Ford had discriminated against him because of his race. Washington sought only monetary damages. On August 6, 1999, Ford and United Auto Workers removed the lawsuit to the United States District Court for the Eastern District of Michigan. The district court granted Ford and United Auto Workers summary judgment and Washington appealed.

## II.

This Court reviews a district court's grant of summary judgment *de novo*. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1176–77 (6th Cir.1996). Summary judgment is appropriate where "there is no genuine issue as to any mate-

rial fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993).

### A.

■ Generally, an employee must exhaust internal grievance procedures before bringing a claim against his or her union for breach of the duty of fair representation under a collective bargaining agreement. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."); *see also Ryan v. General Motors Corp.*, 929 F.2d 1105, 1110 (6th Cir.1989) (same). Courts, however, possess the discretion to waive the exhaustion requirement in certain circumstances. *See Clayton v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 451 U.S. 679, 690, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981).

In determining whether to waive the exhaustion requirement, courts consider three factors: (1) "whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim"; (2) "whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under [the Labor Management Relations Act]"; and (3) "whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim." *Id.*

Washington's only substantive claim on appeal is that the internal union appeals procedure could not award him full relief. The internal union appeals procedures available to Washington, however, were plainly adequate to award Washington the only relief he actually sought: monetary damages. Nevertheless, he urges this court to waive the exhaustion requirement because he could not obtain reinstatement through union appeals procedures.

Washington, however, could not obtain reinstatement through union procedures because he did not seek reinstatement. *See* Appellant's Br. at 21 ("Since Plaintiff *was not seeking reinstatement through the Union Appeal Procedures* ... any further action on his part to exhaust internal union appeals would not have resulted in reactivation of his grievance nor could it have resulted in reinstatement."). Washington's argument, that this Court should waive the exhaustion requirement because he could not obtain relief he did not seek, is hopelessly circular. By Washington's reasoning, if he filed no grievance with his union, he should be allowed to proceed directly to a lawsuit against that union because, having made no claim, he could obtain no relief.

Because Washington could have received the relief he sought through internal union appeals, we decline to waive the exhaustion requirement.

### B.

■ To establish a prima facie case of employment discrimination, Washington must show that (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) he was treated differently than similarly situated non-minority employees for the same or similar conduct. *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). Ford argues that Washington's claim fails under the fourth *McDonnell Douglas* factor because he was not treated differently than the reinstated Caucasian employee and the Caucasian employee was not similarly situated.

Given that Ford reinstated the Caucasian employee and did not reinstate Washington, Ford's argument seems better considered under the fourth *McDonnell Douglas* factor's "similarly situated" requirement. United Auto Workers did not pursue a grievance on Washington's behalf and it did pursue a grievance for the Caucasian employee. Moreover, unlike the Caucasian employee, Washington did not participate in an employee counseling program. Accordingly, the two men were not similarly situated.

The district court correctly determined that Washington was unable to establish a prima facie case under *McDonnell Douglas* and correctly granted summary judgment in favor of Ford.

### III.

For the foregoing reasons we AFFIRM the district court's decision in all respects.