Baiil JACOB, Plaintiff,

v.

ADVANTAGE LOGISTICS MICHIGAN, Local 337 International Brotherhood of Teamsters, AFLCIO, Ken Gabriel, and David Bushway, jointly and severally, Defendants.

No. CIV. 02–40206.

United States District Court,
E.D. Michigan,
Southern Division.

June 25, 2004.

Scott E. Combs, Novi, MI, for Baiil Jacob, Plaintiff.

Allison C. Reuter, Nemeth Burwell, Detroit, David B. Gunsberg, Bloomfield Hills, MI, Patricia M. Nemeth, Nemeth Burwell, Detroit, MI, Kevin J. O'Neill, Rudell & O'Neill, Dearborn, MI, for Advantage Logistics Michigan, Teamsters Local 337, International Brotherhood of, Ken Gabriel, David Bushway, Teamsters, International Brotherhood of, American Federation of Labor, Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

### I. Introduction

This action arises out of Plaintiff's discharge from his employment. Plaintiff brought this action against his former employer Advantage Logistics Michigan, the American Federation of Labor and Congress of Industrial Organizations, the International Brotherhood of Teamsters, the Local 337, and two individual supervisors. The only remaining Defendant in this action is the local union, Local 337. Before the Court is Local 337's motion for summary judgment. The Court heard oral argument on this motion on June 8, 2004. For the reasons stated below, the Court will grant the motion.

### II. BACKGROUND

Plaintiff Baiil Jacob began his employment with Advantage Logistics Michigan ("Advantage") in 1980. This lawsuit arises out of an incident on September 9, 2001, when Plaintiff was working as a hi-lo driver. As a result of the incident, Advantage terminated Plaintiff's employment. The parties present different versions of the facts regarding this incident.

Plaintiff's version is that he was moving pallets, plastic wrap, and a fallen metal cross bar from the area around his hi-lo.

Two other employees, Ed Canedo and Mike Rutan approached Plaintiff. One of the employees, Canedo, allegedly began repeatedly calling him a vulgar name. Plaintiff requested that they stop, threw away the plastic, and placed the metal bar at the end of a rack, for maintenance to dispose of it. Plaintiff then went to his supervisor to complain of the allegedly harassing conduct and requested the remainder of the day off. His request was denied. Later that day, Plaintiff was subsequently suspended and began the grievance process. The other version is that Plaintiff threatened fellow employee Canedo by raising the metal bar and threatening Canedo with it. Based on this second version of events, which was supported by statements of union members Canedo and Rutan, Plaintiff was discharged for threatening another employee.

Plaintiff promptly filed a grievance. Plaintiff claims that the union breached its duty of fair representation in its investigation of the incident and in its representation of him throughout the grievance process. The union did pursue Plaintiff's grievance through the series of steps provided for in the collective bargaining agreement ("CBA").

"Step 1" provides for a "conference between the aggrieved employee, the steward, or both, and the supervisor." CBA Art. 8, § 8.1. This step occurred when Plaintiff completed his grievance form with his steward and supervisor present. "Step 2" provides for a "conference between an official or officials of the Union, or its designated business agent and the appropriate officer in charge of labor relations of Advantage Logistics Michigan, or a representative of the Employer designated by the appropriate officer, or both." Id. At the conclusion of this step, Plaintiff's suspension was upheld and he was terminated. "Step 2a" provides for a "conference

between the President of the Company or, in his absence, another official with full authority and an official or agent of the Local Union with full authority to resolve grievances. Complaints not settled at this step will be referred to Step 3." Id. At the conclusion of this conference, Plaintiff's termination was upheld. "Step 3" provides for a committee composed of

one (1) chairman and full-time member designated by the appropriate officer of the Teamsters International, and the other chairman and full-time member designated by the President of Advantage Logistics Michigan.... [E]ach side will have one (1) vote, cast by [its] chairman, regardless of the number of members present at a hearing. Such committee will have power to settle the grievance and such settlement will be final.

Id. The Step 3 committee met in Nashville, Tennessee on December 5, 2001 to address Plaintiff's grievance. The committee concluded that Plaintiff's termination was proper.

According to the collective bargaining agreement, Step 3 ends the grievance process unless the two chairmen cannot agree. Only if the chairmen cannot agree does the grievance proceed to arbitration. In this case, the chairmen reached agreement and upheld the termination. Consequently, the grievance did not proceed to arbitration. Plaintiff subsequently filed this lawsuit.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party

to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 1991 WL 49687, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## IV. ANALYSIS

At the outset, the Court notes that jurisdiction is proper in this matter based on the Court's federal question jurisdiction. *See* 28 U.S.C. § 1331; 29 U.S.C. § 185. The Court declined to exercise supplemental jurisdiction over Plaintiff's state law

claim under Michigan's Elliott Larsen Civil Rights Act.

■ This action involves a claim brought under Section 301 of the Labor Management Relations Act. 29 U.S.C. § 185; Pl. Resp. at 10. Such a claim is often referred to as a "hybrid" action because Plaintiff must demonstrate *both* "[1] breach of a collective bargaining agreement by the employer and [2] breach of the duty of fair representation by the union." *Garrison v. Cassens Transp. Co.,* 334 F.3d 528, 538 (6th Cir.2003) (emphasis added, citations omitted). Even though the Plaintiff must demonstrate both of these elements, the claim may proceed against only the local union. As the Sixth Circuit has stated, "[i]t is of no consequence that [Plaintiff] already settled with [the local union]. In a hybrid § 301 suit, an 'employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.'" *Garrison,* 334 F.3d at 538 (citing *DelCostello v. Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). Therefore, the Court will examine both elements, beginning with the union's alleged breach of fair representation.

■ It is uncontested that the union owes its members "a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 75, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citations omitted). The question in this case is whether the local union breached that duty. The Sixth Circuit has held that, "[i]n order to prove a breach of the duty of fair representation, an employee must demonstrate that the union's actions or omissions during the grievance process were [1] arbitrary, [2] discriminatory, or [3] in bad faith." *Garrison,* 334 F.3d at 538 (citing *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d

842 (1967)). The Sixth Circuit has further stated that "[e]ach of the wrongs is mutually independent, meaning, that the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty." *Id.* (citation and internal quotation omitted). At the hearing, Plaintiff specifically stated that this claim is brought under the theory that the union's actions were arbitrary, not discriminatory or in bad faith. Accordingly, the Court will limit its examination of the issue to arbitrariness.

The Sixth Circuit has explained that a union's representation is arbitrary,

> only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. Mere negligence on the part of a union does not satisfy this requirement. Moreover, ordinary mistakes, errors, or flaws in judgment also will not suffice. That is, an unwise or even an unconsidered decision by the union is not necessarily an irrational decision. In essence then, the plaintiff has the difficult task of showing that the union's actions were wholly irrational.

*Id.* (citations and internal quotations omitted).

In this case, Plaintiff argues that the union breached its duty of fair representation by not properly investigating the incident, by inadequately arguing on his behalf, and by not proceeding to arbitration. Regarding the alleged lack of investigation, the Court does not consider this inaction to be arbitrary. The local union had statements from two other employees corroborating a version of the incident in which Plaintiff threatened another employee. Those versions were provided by employees who were isolated in two different rooms while writing their statements. Additionally, both of the employees who made

a statement against Plaintiff were fellow union members; Plaintiff even stated that he was not aware of any previous situation in which a union member wrote a statement against another union member. Pl. dep. at 30–31. Furthermore, there was no evidence at the time to suggest that any other employee witnessed the incident. There was no evidence that Plaintiff contemporaneously informed the union of any other potential witnesses or that the union knew of other witnesses. Accordingly, the Court does not consider the alleged lack of investigation to be arbitrary.

■ Regarding the arbitrariness of the alleged inadequate representation, Plaintiff claims that the union failed to obtain additional statements, failed to meet with Plaintiff before the conferences, and failed to argue at the conferences. Even viewing the allegations in the light most favorable to Plaintiff, the Court cannot conclude that these allegations are sufficient to demonstrate that the union acted arbitrarily, or "wholly irrationally" as the Sixth Circuit requires, at any stage of the grievance process.

Plaintiff does not appear to object to anything specific at Step 1 of the grievance process. At Step 2, the union's business agent, Bob Barnes, and a union steward, Ray Landino, were present with Plaintiff. Plaintiff claims that the union representative should have met with him before the conference and argued on his behalf. Instead, the union representatives did not speak; Plaintiff spoke on his own behalf. Plaintiff does not identify, in his deposition or in his brief, any specific argument that the union representative should have raised at the conference. See Pl's dep. at 108–10. Plaintiff merely alleges that he "did [his] best to speak on [his] behalf, but [the union representative] could have done better." Id. Simply alleging that the union representative could have done better does

not suffice to allege that the union representative's actions were arbitrary or wholly irrational. It is not wholly irrational to allow Plaintiff to argue on his own behalf. By being present at the hearing, the union representatives may have diminished the potential for the employee feeling intimidated while making his arguments. The union representatives were available at the meeting to answer questions or assist. Although Plaintiff argues that his English is insufficient to argue successfully, his deposition testimony indicates that he is capable of communicating in English.

At Step 2a, the union's business agent, Bob Barnes, and a union steward, Ray Landino, as well as the local union's vice president, Bobby Holmes, Jr., appeared with Plaintiff. Plaintiff again claims that the union's arguments and preparations were inadequate. Plaintiff was dissatisfied with Mr. Barnes's arguments, but could not articulate any specific inadequacies. Plaintiff was, however, satisfied with the arguments made by the vice president; Plaintiff stated "Bobby, Jr. did satisfy— satisfied me [by] the explanation that he tried to inject into the discussion." Pl. dep. at 119. This satisfaction suggests that the union's representation at this step was not wholly irrational or arbitrary. The union representatives were present with Plaintiff and did make arguments on his behalf. The Court also notes that the Sixth Circuit has stated that "[w]hen reviewing a union representative's actions or omissions, we must never lose sight of the fact that union agents are not lawyers, and as a general proposition, cannot be held to the same standard as that of licensed professionals." Garrison, 334 F.3d at 539 (citations omitted). Under this standard, the Court cannot conclude that the union acted arbitrarily.

At the Step 3 hearing, Plaintiff was asked after his grievance had been argued,

but before the decision had been made, whether the union had represented him fairly. Plaintiff answered affirmatively. Pl. dep. at 136, 143. Only after the committee voted against his grievance did Plaintiff claim that he was not fairly represented: "... but at the conclusion of it, he went against me." *Id.* Plaintiff explained that,

A. Seems like [the union] did all right. They was [sic] talking the way I expect[ed]. But the reason, at the conclusion of the case is my problem. This-

Q: Okay.

A: The union cannot vote, they have to send you to arbitration ...

Q: And the injustice was?

A: Is that the case was not taken to arbitration. It should go to arbitration, should not be decided by the company representative and the union representative. According to our contract, when both of them cannot solve the problem, the case has to go to arbitration. Only the arbitrator can finalize it. Not the two representatives there.

*Id.* This quotation indicates that Plaintiff's fundamental complaint is in the outcome of his grievance. Plaintiff's testimony suggests a belief that the grievance process can only be solved by arbitration or by a reinstatement to his position; this belief, however, is incorrect. The collective bargaining agreement clearly provides that the grievance can be resolved at Step 3 if the union and employer chairmen agree that the termination was proper, as occurred in this case. Just because the union chairman did not vote to overturn Plaintiff's discharge at Step 3 does not entail that the union breached a duty of fair representation. The union chairman does not have a duty to vote in Plaintiff's favor. Plaintiff's arguments do not demonstrate that the union acted arbitrarily.

▊ Furthermore, even if the union's actions were deemed arbitrary, Plaintiff must also show that "the union's actions or omissions tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach." *Garrison,* 334 F.3d at 539 (citation and internal quotation omitted). In this case, where there was corroborated evidence that Plaintiff threatened another employee, it is not clear that the alleged arbitrary representation affected the outcome. Accordingly, the Court determines that Plaintiff has not demonstrated that the union breached its duty of fair representation.

▊ Finally, even if Plaintiff succeeded in demonstrating a breach of the duty of fair representation, Plaintiff must still show that the employer breached the collective bargaining agreement. Plaintiff has failed to show that the employer breached any provision of the collective bargaining agreement. The grievance proceeded through each of the appropriate steps in the grievance process. Arbitration was not permissible because the Step 3 committee was unanimous in its decision; consequently its decision was final. Plaintiff appears to argue that the employer should have investigated the incident more diligently or thoroughly, but the Court does not find such a duty imposed by the collective bargaining agreement. Accordingly, Plaintiff has also failed to demonstrate the second required element of a hybrid claim.

## V. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED,** that the motion for summary judgment by Defendant Local 337 [docket entry 51] is **GRANTED.**

**SO ORDERED.**